Richard TUCKER, Petitioner-Appellant,

v.

Ralph M. KEMP, Warden, Georgia Diagnostic and Classification Center, Respondent-Appellee.

No. 87–8374.

United States Court of Appeals, Eleventh Circuit.

May 20, 1987.

**750**

Millard Farmer, Team Defense Project, Inc., Joseph M. Nursey, Atlanta, Ga., for petitioner-appellant.

Susan Boleyn, Asst. Atty. Gen. of Georgia, Atlanta, Ga., for respondent-appellee.

Before VANCE, JOHNSON and ANDERSON, Circuit Judges.

BY THE COURT:

Petitioner's motion for leave to proceed in forma pauperis is GRANTED. The Clerk is directed to file petitioner's papers heretofore lodged with the court.

Petitioner's application for a certificate of probable cause to appeal is DENIED in accordance with the per curiam opinion contemporaneously filed herein.

Petitioner's motion for a stay of execution is DENIED.

PER CURIAM:

Petitioner, Richard Tucker, was convicted of murder and kidnapping in the Superior Court of Bibb County, Georgia. He received two sentences of death. A detailed recitation of the facts of this case appear in *Tucker v. Kemp*, 762 F.2d 1496,

1503–05 (11th Cir.1985) (en banc). Tucker's convictions and sentences were affirmed by the Georgia Supreme Court, *Tucker v. State*, 245 Ga. 68, 263 S.E.2d 109 (1980), and *certiorari* was denied by the United States Supreme Court, *Tucker v. Georgia*, 449 U.S. 891, 101 S.Ct. 253, 66 L.Ed.2d 119 (1980).

Before the court at this time is an application for a certificate of probable cause to appeal from the district court's denial of Tucker's latest petition for federal habeas corpus relief. The district court also denied Tucker's motion for certificate of probable cause to appeal and motion to stay his execution, scheduled for Friday, May 22, 1987 at 7:00 p.m. 660 F.Supp. 832 (M.D.Ga.1987). After careful review of the record, this court concludes that Tucker's application for certificate of probable cause to appeal should be denied.

■ Tucker presents four contentions: (1) that police officers obtained an incriminating statement from him in violation of his right to counsel; (2) that inflammatory and prejudicial photographs of the victim's body were admitted at his trial; (3) that he was denied the right to an independent psychiatric evaluation; and (4) that the jury was never instructed that their verdict on the sentence must be unanimous. Tucker's first two contentions were raised and decided on the merits in his previous federal petition. His latter two claims were not raised in his previous petition. Since the State has affirmatively pled abuse of the writ of habeas corpus, Tucker must show that his contentions do not constitute an abuse of the writ. *Price v. Johnston*, 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948).[1]

---

1. Where a claim has been decided on the merits in a previous federal habeas proceeding, the district court may dismiss the petition unless the petitioner establishes that the ends of justice would be served by reconsideration of the claim. Rule 9(b), 28 U.S.C. foll. § 2254; *Witt v. Wainwright*, 755 F.2d 1396, 1397 (11th Cir. 1985). Whether the ends of justice require reconsideration is determined by objective factors, including whether there has been an intervening change in the law. *Witt*, 755 F.2d at 1397; *see also Kuhlmann v. Wilson*, —— U.S.

——, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986) (plurality opinion) ("[T]he 'ends of justice' require federal courts to entertain [successive] petitions only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence.").

Where a petitioner fails to raise a claim in his first habeas petition, a district court need not consider the claim unless the petitioner establishes that his failure to raise the claim was not the result of intentional abandonment, with-

### 1. Inculpatory Statement

Tucker maintains that while he was in custody and after he had sought the appointment of counsel, police obtained from him an inculpatory statement in violation of his constitutional right to counsel. Since this very issue was raised and decided on the merits in Tucker's first petition for federal habeas relief, Tucker must show to this court that the ends of justice require our reconsideration of this contention.[2]

Tucker maintains that he meets the ends of justice standard because of the recent Supreme Court decision in *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). *Michigan v. Jackson* held that "if *police initiate* interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that *police-initiated* interrogation is invalid." 106 S.Ct. at 1411 (emphasis added). The district court found that the inculpatory statements in question were initiated by Tucker, and not by the police. We conclude that the record amply supports this finding.[3] Because it is factually inapplicable the intervening ruling in *Michigan v. Jackson*, therefore provides no support for Tucker's contention.

### 2. Photographs

Tucker next asserts that inflammatory and prejudicial photographs of the victim's body were introduced at trial in violation of his constitutional right to a fair trial. Tucker admits that he has previously raised this issue, but argues that the Supreme Court's recent grant of *certiorari* in *Thompson v. Oklahoma*, — U.S. —, 107 S.Ct. 1284, 94 L.Ed.2d 143 (1987), requires another review of his contention. The Supreme Court's grant of *certiorari* in *Thompson v. Oklahoma* does not sufficiently suggest that "new law" relevant to the present case is near at hand. The petition for *certiorari* in *Thompson v. Oklahoma* raised two issues of which only one may be marginally relevant to the present case. This court has no way of knowing which issue prompted the Court to grant *certiorari.* Thus the ends of justice would not be served by revisiting this issue.

### 3. *Ake* Violation

Tucker also asserts that he is entitled to relief under *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In *Ake*, the Supreme Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure

---

holding or inexcusable neglect. Rule 9(b), 28 U.S.C. foll. § 2254; *Witt,* 755 F.2d at 1397.

**2.** *See supra* note 1.

**3.** Petitioner made two statements to the police. In the first statement, made on September 21, 1978, petitioner admitted being present when the victim was killed, but implicated an accomplice as the killer. In the second statement, made on September 22, 1978, petitioner stated that he alone had committed the crime and killed the victim. Both statements were made after *Miranda* warnings and signing of a written waiver of rights and both were found to be voluntary after a *Jackson v. Denno* hearing conducted by the trial judge upon petitioner's motion to suppress.

Petitioner's second statement was made immediately after he had appeared before a judge for a committal hearing. At that hearing, petitioner asserts that counsel was requested for petitioner and that Bishop, one of the interrogating officers was present.

Petitioner argues that because of the close proximity of the second questioning to the first police-initiated interrogation, the fact that petitioner initiated the second conversation should not make *Jackson* inapplicable to his case. Petitioner had been questioned the day before by the interrogating officers. Bishop testified that this interrogation lasted from 8:20 until approximately noon, at which time the interrogating officers and petitioner were at the scene of the crime where petitioner pointed out the location of some evidence. After petitioner showed the officers the location of the evidence he was returned to the city jail. His next contact with the officers as far as the record shows was when he was taken to his committal hearing at approximately 8:15 the next morning. (The second interview took place at 8:45.) There clearly was a break in interrogation between the first and second interviews that made petitioner's request to talk to the officers on the morning of September 22 a contact that he initiated.

the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." 470 U.S. at 83, 105 S.Ct. at 1097. Tucker did not raise this contention in his first federal petition. If Tucker's assertion is well grounded in fact, however, this contention does not present an abuse of the writ problem because *Ake v. Oklahoma* represents a change in the law from that controlling at the time of Tucker's previous petitions. As such, Tucker's failure to raise this claim would be excusable.

■ The district court found, however, that Tucker "was not able to make the necessary demonstration to the trial judge that his sanity at the time of the offense was to be a significant factor at trial." Again, after reviewing the record, we conclude that this finding is fully supported.

Prior to trial, Tucker's motion for a psychiatric evaluation was granted by the trial court. Tucker was evaluated by the psychiatric staff at Central State Hospital and a state psychologist in Macon. The purpose of the evaluation was to determine Tucker's competency to stand trial and his sanity at the time of the crime. Central conducted its evaluation for one day. The psychologist interviewed Tucker for approximately 1 to 1½ hours and reviewed his record and test results from Central.

Trial counsel's motion for further psychiatric evaluation was denied after an evidentiary hearing at which petitioner presented testimony by the psychologist that his time frame for evaluating Tucker had been constricted and that in his opinion Tucker needed to be observed for approximately two weeks. The psychologist also testified, however, that there was no indication that Tucker was neurotic or psychotic, that Central had reached a similar conclusion, and

that further observation and interviewing would not change that opinion. The psychologist testified that at most Tucker suffered from a personality disorder and that further observation at Central would only help determine the nature of this personality disorder.

Assuming that trial counsel's request was for a psychiatrist to aid in the defense at trial,[4] it does not appear that the district court erred in determining that the requirements of *Ake* were satisfied in this case because petitioner did not make a showing that his sanity would be a significant factor in the trial. *See, e.g., Bowden v. Kemp,* 767 F.2d 761 (11th Cir.1985). Petitioner points to the trial court's finding in connection with ordering the initial examination that "the mental competency of [Tucker] is in question," the fact that Tucker previously had received psychological treatment at Reidsville, statements by Tucker in his confession and to his parole officer that he was incapable of controlling his behavior when the crime was committed, and the fact that trial counsel requested the initial psychiatric evaluation because Tucker appeared disoriented, lacked emotional response and exhibited other signs of mental illness as establishing that his mental condition would be a significant factor. Neither of the state examinations, however, revealed any signs of psychosis or neurosis. Despite petitioner's assertion that without the requested psychiatric evaluation trial counsel were forced to abandon their efforts to present a defense based on Tucker's mental condition, trial counsel later testified during the evidentiary hearing regarding ineffective assistance of trial counsel that the two psychiatric evaluations "negated any idea that Mr. Tucker was mentally unbalanced" and thus

---

4. The record does not indicate that petitioner ever requested the aid of an independent psychiatrist to help him in his defense. Petitioner characterizes trial counsel's request as one for a psychiatric evaluation in addition to the state evaluation. The transcript of the evidentiary hearing on the request, however, indicates that trial counsel stated that the purpose of the hearing was "whether or not the psychological evaluations that were done on Mr. Tucker were ade-

quate enough for a determination of his mental competency to stand trial" and "whether or not adequate time was involved in the conduct of those tests." The trial court stated the issue as "whether or not Mr. Tucker should be recommitted for additional evaluation" and trial counsel agreed with this characterization. Thus, it appears that the issue actually raised by trial counsel was whether the state psychiatrists should conduct a more thorough examination.

"quashed" the possibility of an insanity defense.

### 4. Failure to Charge Jury on Unanimity of Verdict on Penalty

Finally Tucker asserts that the trial court erred in failing to instruct the jury that their verdict on Tucker's sentence must be unanimous. Tucker also asserts that his failure to raise this issue in previous petitions was due to an oversight on the part of his counsel, including present counsel, who "ineffectively fail[ed] to recognize this issue."

■ Tucker fails to submit any authority which suggests that a verdict that is not unanimous is a deprivation of constitutional dimension. Petitioner's argument seems to be that, although the constitution does not require a unanimous verdict at the penalty stage, because Georgia does require unanimity and therefore has created a right, "an arbitrary abrogation of that right is violative of due process." *Cf. Vitek v. Jones*, 445 U.S. 480, 488–89, 100 S.Ct. 1254, 1261–62, 63 L.Ed.2d 552 (1979) (state statutes may create liberty interests that are entitled to procedural protections of due process). There is no evidence in the present case, however, of "arbitrary abrogation." Indeed, there is no indication that the verdict was not unanimous. Petitioner simply failed to request such an instruction and to object to the court's failure to give the instruction.

■ Petitioner has also failed to meet his burden of establishing that the failure to raise this claim in his first petition was not the result of inexcusable neglect. Tucker has not argued, much less made any showing that his attorney's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment" and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1983). Petitioner's assertion is no more than a claim that counsel overlooked the issue, without any explanation as to why that action was not inexcusable neglect.

### Conclusion

Petitioner has not made "a substantial showing of the denial of a federal right." *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1982). The issues presently before us are not "debatable among jurists of reason." *Id.* at 893 n. 4, 103 S.Ct. at 3394 n. 4. Petitioner's application for a certificate of probable cause to appeal is therefore DENIED.