Wayne E. RITTER, Petitioner,

v.

Morris THIGPEN, Commissioner, Alabama Department of Corrections, and Willie Johnson, Warden, Holman Unit, Respondents.

Civ. A. No. 87–00854–BH.

United States District Court,
S.D. Alabama, S.D.

Aug. 25, 1987.

David A. Bagwell, John Bertolotti, Mobile, Ala., for petitioner.

Ed Carnes and John Gibbs, Asst. Attys. Gen., Montgomery, Ala., for respondents.

## ORDER

HAND, Chief Judge.

This death penalty case is before the Court on Wayne E. Ritter's second petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was tried and convicted of capital murder and sentenced to death in 1977 in an Alabama state court. The procedural history of this case has, in part, been exhaustively presented by numerous courts during the appellate review process encompassing a number of years and it will not be further duplicated. *See, e.g., Ritter v. State,* 429 So.2d 928, 931–32 (Ala.1983); *Ritter v. Smith,* 568 F.Supp.

1499 (S.D.Ala.1983); *Ritter v. Smith,* 726 F.2d 1505 (11th Cir.1984).

Petitioner filed his first habeas petition and application for stay of execution on May 5, 1983. Following an evidentiary hearing held on August 11, 1983, this Court entered judgment denying this habeas petition. *Ritter,* 568 F.Supp. at 1499. On February 27, 1984, the Eleventh Circuit Court of Appeals affirmed this Court's judgment in all respects, except that it held petitioner was entitled to a new sentencing hearing. That decision was based on its belief that the statute under which petitioner had been sentenced to death was facially unconstitutional. *Ritter v. Smith,* 726 F.2d 1505 (11th Cir.), *cert. denied* 469 U.S. 869, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984). Pursuant to the Eleventh Circuit's mandate, this Court issued an order on December 3, 1984 conditionally granting the writ unless the State resentenced petitioner within a specified period of time. Thereafter, and before the State had resentenced Ritter, the Supreme Court granted certiorari in *Baldwin v. Alabama,* 469 U.S. 1085, 105 S.Ct. 589, 83 L.Ed.2d 699 (1984), on the same facial constitutionality issue upon which the Eleventh Circuit had ordered this Court to grant petitioner relief. The Supreme Court ultimately upheld the facial constitutionality of the sentencing statute. *Baldwin v. Alabama,* 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985).

As a result of the *Baldwin* decision, this Court, on March 5, 1986, granted the State Rule 60(b)(6) relief; set aside its earlier order conditionally granting the writ; and entered an order denying petitioner's May 5, 1983 habeas petition with prejudice, again. This order was subsequently affirmed by the appellate courts. *Ritter v. Smith,* 811 F.2d 1398 (11th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987).

On June 22, 1987, the State filed a motion in the Alabama Supreme Court asking it to set a new execution date for petitioner. He filed nothing in opposition to that motion. On July 7, 1987, the Alabama supreme Court entered an order setting petitioner's execution for August 28, 1987. Pe-

titioner filed nothing in state or federal court between the time his last certiorari petition was denied by the Supreme Court on June 22, 1987 and the filing of this, his second habeas petition, on August 24, 1987. The State has indicated in its answer to the petition, and the Court accepts, that the State will waive any exhaustion of state remedies defense and any procedural bar defense it might have, which waiver was concurred in by the petitioner's counsel. Accordingly, the Court has jurisdiction to consider this petition.[1]

This cause came on for oral arguments this day on the two issues now raised by the petitioner as grounds for habeas relief: (1) that it is unconstitutional to have an element of the crime used a second time and double counted as an "aggravating factor"; and (2) ineffective assistance of counsel. The Court has carefully considered the arguments of counsel, together with the record as a whole, and, for the reasons stated below, concludes that the petitioner is not entitled to habeas relief, that his petition is due to be dismissed with prejudice, and that his motion for a stay of execution is due to be denied.

## I. *Lowenfield Issue*

The Court, only for the purpose of coherency, will set forth certain facts previously established.

Petitioner was convicted of the *Code of Alabama* 1975, § 13–11–2(a)(2) capital offense of robbery when the victim is intentionally killed. At a sentence proceeding conducted without a jury, the trial court found four separate aggravating circumstances:

(a) The Court finds that the Capital Felony was committed by Mr. Ritter while he was under sentence of imprisonment although he was serving the remainder of his sentence on parole at the time;

(b) The Court finds that Mr. Ritter has been previously convicted of another felony involving the use or threat of vio-

lence to the person; to-wit: the offense of robbery;

(c) The Court finds that Mr. Ritter has knowingly on approximately thirty-nine previous occasions created a great risk of death to many persons;

(d) The Court finds that the Capital Felony was committed while Mr. Ritter was an accomplice in the commission of a robbery.

(T. 30–31, 243–44); ("T. _____" refers to the state trial court record.) *Evans and Ritter v. State*, 361 So.2d 654, 664–665 (Ala.Cr. App.1977). *See, Code of Alabama* 1975, § 13–11–6(1)–(4). The relationship between the capital offense definitions and the statutory aggravating circumstances in the statute under which petitioner was sentenced was discussed by the Supreme Court in *Baldwin v. Alabama*, 472 U.S. 372, 380–81 and n. 6, 105 S.Ct. 2727, 2732 n. 6, 86 L.Ed.2d 300, 306–309 & n. 6 (1985).

Petitioner's first claim, which concerns the overlap of the fourth statutory aggravating circumstance with the capital offense definition, is barred by the abuse of the writ doctrine. On the merits, it is contrary to binding Eleventh Circuit precedent. Neither the claim itself nor the Supreme Court's grant of certiorari in *Lowenfield v. Phelps*, —— U.S. ——, 107 S.Ct. 3227, 97 L.Ed.2d 734 (1987), justifies a certificate of probable cause or a stay of execution in this case.

■ Prior to the filing of this habeas petition, petitioner's case had been before the Alabama Court of Criminal Appeals twice, before the Alabama Supreme Court five times, before the United States Supreme Court five times, and before this Court and the Eleventh Circuit Court of Appeals twice each. Petitioner has never before raised any claim concerning the overlap of the capital offense definition with one of the statutory aggravating circumstances.

Petitioner's two previous trips before this Court and the Eleventh Circuit involved his first federal habeas petition,

---

1. *See,* Thompson v. Wainwright, 714 F.2d 1495 (11th Cir.1983), *cert. denied*, 466 U.S. 962, 104    S.Ct. 2180, 80 L.Ed.2d 562 (1984).

which he filed in this Court on May 5, 1983. (R. 1–27). ("R ___" refers to the record on appeal in petitioner's prior federal habeas proceeding). Petitioner raised ten claims before this Court in his 1983 habeas petition. See *Ritter v. Smith*, 568 F.Supp. 1499 (S.D.Ala.1983). None of petitioner's ten claims in his first habeas petition involved the overlap claim that he is attempting to raise for the first time now.

On May 11, 1983, this Court entered a scheduling order in petitioner's first habeas proceeding. Part of that order stated as follows:

This case has been in litigation for six years and has been before the Alabama Supreme Court and the Supreme Court of the United States on numerous occasions, and the issues in this case should now be well defined. Petitioner's attorney, John Carroll, Esq., is well versed in the law pertaining to capital cases, and has represented Mr. Ritter throughout most of his post-trial proceedings, and should be completely familiar with all of those proceedings and the issues raised therein. The Court is well aware that in capital punishment cases there is a predilection to piecemeal the issues, not for the edification of the law or vindication of rights of the petitioner, but to serve some other ends. Wherefore, it is further ORDERED that counsel for the petitioner has until May 20, 1983 in which to amend the petition to aver each and every ground that he can conceivably think of that can be asserted under the conditions prevailing in this factual situation that are within the law on which to attack the constitutionality of the Alabama death statute or the incarceration of Wayne Ritter, and any proceedings held therein. If counsel for Mr. Ritter declines to follow the orders and directions of this Court in this regard then, by such declination, they will thereby be presumed to have deliberately waived the rights to any such proceedings on any such actions in the future. See Rule 9(b), Rules Governing Cases Brought Under 28 U.S.C. § 2254. This Court and the judicial processes will not be used to thwart the will of the people, but the doors of this Court are now open to Mr. Ritter to do whatever he can through the agencies of his selected counsel, whom the Court finds extremely competent in these matters, to exhaust his remedies on the constitutional questions and any other questions that have viable merit under the law and to seek whatever appropriate remedies, if any, to which he might be entitled.

(R. 88–89); *see, Ritter v. Smith*, 568 F.Supp. 1499, 1502 (S.D.Ala.1983). In spite of this Court's clear and forceful warning to petitioner and his counsel, no amendment was filed to raise any additional claims. *Ritter v. Smith*, 568 F.2d at 1502.

After this Court heard and denied the claims petitioner put forward in his 1983 petition, he filed an appeal through the Eleventh Circuit in which he raised seven issues, none of which involved the overlap claim that he is attempting to raise now. (Petitioner's October 26, 1983 Brief to the Eleventh Circuit).

Under 28 U.S.C. § 2244(b), this Court need not entertain this newly raised claim unless it is satisfied that petitioner "has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ." Under Habeas Rule 9(b), petitioner's second or successive petition raising new or different grounds of relief may be dismissed if "the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." It is the opinion of this Court that petitioner's failure to assert this overlap claim constitutes an abuse of the writ.

■ The burden of pleading an abuse of the writ is on the State, and the State carries that burden "by recounting the petitioner's writ history, identifying the claims not raised before the instant petition and alleging that the petitioner has abused the writ in violation of 28 U.S.C. § 2254, Rule 9(b)." *Booker v. Wainwright*, 764 F.2d 1371, 1376 (11th Cir.), *cert. denied*, 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985). In the answer filed in this case, respondents have carried the State's burden of pleading an abuse of the writ.

■ Once abuse of the writ has been pleaded by the State, the burden shifts to the petitioner to prove that his failure to raise the issue in his first petition was not the result of intentional withholding or inexcusable neglect. *E.g., In re Shriner,* 735 F.2d 1236, 1240 (11th Cir.1984); *Booker v. Wainwright,* 764 F.2d at 1376; *Jones v. Estelle,* 722 F.2d 159, 164 (5th Cir.1983), *cert. denied,* 466 U.S. 976, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984); *see, Woodard v. Hutchins,* 464 U.S. 377, 379 n. 3, 104 S.Ct. 752, 753 n. 3, 78 L.Ed.2d 541 (1984) ("There is no affirmative evidence that the claims were deliberately withheld. But *Hutchins* has had counsel throughout the various phases of the case, and no explanation has been made as to why they were not raised until the very even of the execution date.").

28 U.S.C. § 2244(b) defines an abuse of the writ as having occurred when the petitioner deliberately withheld the claim from his first petition *"or* otherwise abused the writ" (emphasis added). That alternative language means that even if the claim was not deliberately withheld, if the reason petitioner did not raise the claim in his first petition was inexcusable neglect, the claim is nonetheless barred under the abuse of the writ doctrine. *See, e.g., Tucker (William) v. Kemp,* 819 F.2d 978, 980 (11th Cir.1987), *cert. denied,* —— U.S. ——, 107 S.Ct. 2472, 96 L.Ed.2d 364 (1987); *Tucker (Richard) v. Kemp,* 818 F.2d 749, 753 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 2209, 95 L.Ed.2d 863 (1987).

A habeas petitioner who was represented by competent counsel in his first habeas proceeding is "chargeable with counsel's actual awareness of the factual and legal bases of the claim at the time of the first petition and with the knowledge that would have been possessed by reasonably competent counsel at the time of the first petition." *Moore v. Kemp,* 824 F.2d 847, 851 (11th Cir.1987) (en banc). As this Court noted in its May 11, 1983 order warning petitioner and his counsel to present "each and every ground that he can conceivably think of," petitioner's counsel at that time was "well versed in the law pertaining to capital cases" and was "extremely competent in these matters." (R. 88–89). In any

event, the simple failure of prior habeas counsel to recognize a legal issue constitutes inexcusable neglect, and the abuse of the writ doctrine applies in that situation. *E.g., Tucker (William) v. Kemp, supra; Tucker (Richard) v. Kemp, supra.*

■ A change in the law which makes a new claim available for the first time after the earlier habeas petition was filed may excuse the failure to raise that claim in the first petition. *See, e.g., Moore v. Kemp,* 824 F.2d 847 (11th Cir.1987) (en banc). However, in *Tucker (William) v. Kemp,* 819 F.2d 978, 980 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 2472, 96 L.Ed.2d 364 (1987), the court held that the failure to raise a *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), claim before the *Franklin* decision was released was inexcusable neglect because *Franklin* did not constitute "new law" and was instead merely an extension of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), which had been decided before the earlier habeas petition was filed. In any event, petitioner's apparent contention that the Eighth Circuit decisions or the grant of certiorari in *Lowenfield* constitute "new law" that excused his neglect in failing to raise the overlap issue earlier is without merit.

■ *Collins v. Lockhart,* 754 F.2d 258 (8th Cir.), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985), and the other Eighth Circuit cases that petitioner cites do not constitute "new law" which excuses petitioner's failure to raise the overlap claim in his 1983 habeas petition, because those decisions are not the law in this circuit. Instead, the law in the Eleventh Circuit, both before and after the *Collins* decision, is just the opposite. *See, e.g., Adams v. Wainwright,* 709 F.2d 1443 (11th Cir.), *cert. denied,* 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984); *Porter v. Wainwright,* 805 F.2d 930, 943 n. 15 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3196, 96 L.Ed.2d 683 (1987). See also, *Lindsey v. Smith,* 820 F.2d 1137, 1153 (11th Cir.1987). The law of the Fifth Circuit is in accord. *Moore v. Butler,* 819

F.2d 517, 521 (5th Cir.1987); *Berry v. Phelps,* 819 F.2d 511, 516–17 (5th Cir.1987) ("No circuit court has followed the Eighth Circuit decision in *Collins,* and we have expressly rejected it on several occasions.").

It is therefore apparent that the present situation is entirely different from that in *Moore v. Kemp, supra,* because both decisions directly applicable in that case were binding in the Eleventh Circuit (*Estelle* because it was a Supreme Court decision and *Proffitt* because it was an Eleventh Circuit decision). Here, *Collins* is not "new law" in this circuit which excuses petitioner's otherwise abusive petition.

■ The recent grant of certiorari in *Lowenfield v. Phelps,* —— U.S. ——, 107 S.Ct. 3227, 97 L.Ed.2d 734 (1987), is not "new law," either. It is hornbook law that the grant of certiorari does not constitute new law. In *Mulligan v. Kemp,* 818 F.2d 746, 747–48 (11th Cir.1987), the Court explained that the grant of certiorari in another case does not constitute new law for abuse of writ purposes, because "there is no decided case upon which to pass a new law claim." In *Tucker (Richard) v. Kemp,* 818 F.2d 749, 751 (11th Cir.1987), *cert. denied,* —— U.S. ——, 107 S.Ct. 2209, 95 L.Ed.2d 863 (1987), the Court held that a grant of certiorari in another case involving the same or similar issue does not "sufficiently suggest that the 'new law' relevant to the present case is at hand" for successive petition or abuse of the writ purposes. *Accord, Moore v. Blackburn,* 806 F.2d 560, 565 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1988, 95 L.Ed.2d 827 (1987). The Eleventh Circuit pointed out in *Tucker (Richard) v. Kemp, supra,* that that is especially true where certiorari has been granted on two issues, only one of which is present in the case at hand. That is the situation here, because certiorari was granted in *Lowenfield* on two issues, only one of which involved the overlap question. *See,* 107 S.Ct. 3227; 55 U.S.L.W. 3876.

■ Even if the *Collins* decision or the *Lowenfield* certiorari grant did constitute "new law" in this circuit for abuse of the

writ purposes—which they do not—that would still not excuse petitioner's failure to raise this overlap issue in his earlier federal petition, because the issue was clearly foreseeable and had been raised at that time by a number of other capital defendants in Alabama and elsewhere. By May 5, 1983, when petitioner filed his first federal habeas petition, the overlap issue had been litigated a number of times in the Alabama courts, and at first the defendants were successful with it. *See, e.g., Keller v. State,* 380 So.2d 926, 936–37 (Ala.Cr.App. 1979); *Bufford v. State,* 382 So.2d 1162, 1173–74 (Ala.Cr.App.1980); *Nelson v. State,* 405 So.2d 392, 400 (Ala.Cr.App.1980).

Later, the Alabama Supreme Court and the Court of Criminal Appeals overruled those cases and held that it was not impermissible for a sentencing court to find and consider a statutory aggravating circumstance that overlapped with the capital offense definition in the case. The decision in *Tarver v. State,* 500 So.2d 1232, 1250 (Ala.Cr.App.), *aff'd,* 500 So.2d 1256 (Ala.), *cert. denied,* —— U.S. ——, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987), cites eight other cases, arising both under the 1975 statute and the 1981 statute, in which defendants unsuccessfully argued that the overlap of a statutory aggravating circumstance with the capital offense definition was impermissible. Although not cited in the *Tarver* decision, to the same effect are *Floyd v. State,* 486 So.2d 1309, 1315 (Ala.Cr.App. 1984), *aff'd,* 486 So.2d 1321 (1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1328, 94 L.Ed.2d 179 (1987) and *Ex parte Grayson,* 479 So.2d 76, 81 (Ala.), *cert. denied,* 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985). Thus, in a line of cases beginning before petitioner filed his first habeas petition and extending afterwards, more than a dozen other Alabama capital defendants have raised the issue of the overlap of a statutory aggravating circumstance with the capital offense definition.

In addition, even before petitioner filed his May 5, 1983 habeas petition, capital defendants in other states had recognized and raised the overlap issue, with varying degrees of success. *E.G., State v. Taylor,*

304 N.C. 249, 283 S.E.2d 761, 783–84 (1981), cert. denied, *463 U.S. 1213, 103 S.Ct. 3552, 77 L.Ed.2d 1398 (1983);* State v. Cherry, *298 N.C. 86, 257 S.E.2d 551, 567–68 (1979),* cert. denied, *446 U.S. 941, 100 S.Ct. 2165, 64 L.Ed.2d 796 (1980);* State v. Goodman, *298 N.C. 1, 257 S.E.2d 569, 584–85 (1979);* State v. Johnson, *298 N.C. 47, 257 S.E.2d 597, 622 (1979);* People v. Kubat, *94 Ill.2d 437, 69 Ill.Dec. 30, 447 N.E.2d 247, 276 (1983),* cert. denied, *464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983);* State v. Pritchett, *621 S.W.2d 127, 140–41 (Tenn.1981);* State v. Monroe, *397 So.2d 1258, 1274 n. 6 (La.1981),* cert. denied, *463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1411 (1983).* In *North Carolina at least, the prohibition against overlap was expressly premised on federal constitutional law grounds.* See, State v. Brown, *306 N.C. 151, 293 S.E.2d 569, 585–86,* cert. denied, *459 U.S. 1080, 103 S.Ct. 503, 74 L.Ed.2d 642 (1982).*

It is, therefore, abundantly clear that the overlap issue was a readily recognizable, and widely recognized issue. The fact that this issue was not raised in the first habeas petition by petitioner's extremely competent counsel who was well versed in the law pertaining to capital cases means, in this Court's opinion, that the issue was either deliberately withheld, the more plausible explanation, or that the failure to raise it was inexcusable neglect. In either event, abuse of the writ principles apply to bar the claim.

■ The Eleventh Circuit in *Moore v. Kemp,* 824 F.2d 847 (11th Cir.1987), did

hold that what would otherwise be an abuse of the writ could be excused—and the merits of the belated claim reached—if the "ends of justice required." *Id.,* at 856. They do not so require in this case. Petitioner is a confessed robber-murderer who committed more than three dozen violent felonies in a multi-state crime spree. He not only admitted his guilt, he boasted about it. Instead of asking to be spared, petitioner demanded the death penalty and threatened to harm the jurors if he didn't get it. The simple fact that one of the four aggravating circumstances in his case overlapped with the capital offense definition did not cause him to receive the death penalty, and it certainly did not work any injustice in the sentencing result.[2]

In *Moore v. Kemp, supra,* the en banc court suggested that the "ends of justice" formulation of the four-member plurality in *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), might be the law, notwithstanding the fact that a majority of the Supreme Court has neither endorsed nor rejected that formulation. At 856–57. If the *Kuhlmann* "colorable showing of factual innocence" formulation is the law, then the question becomes how that formulation applies to a claim involving the sentence stage of a capital case. By citing *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), as an analogy, the Eleventh Circuit in *Moore v. supra,* suggested that the proper test might be whether the alleged error preclud-

---

**2.** In the 1983 habeas proceeding, this Court rejected petitioner's contention that another part of the sentencing provisions had caused him to be sentenced to death. In rejecting that earlier contention, this Court made some statements which are equally applicable to petitioner's present contention that the overlap of one of the statutory aggravating circumstances with the capital offense definition caused him to be sentenced to death. This Court found then, and it continues to find, that:

> The reason that the petitioner is facing a death sentence is not the result of any peculiarities of the capital punishment statute under which he was tried. Rather, the petitioner is facing a sentence of death as a result of his own criminal conduct and his having adopted a legal strategy, however unwise, which was adopted freely, knowingly, and

voluntarily by the petitioner himself for which no other person or factor is responsible. The Court cannot help but note that as attorney Stephens testified at the evidentiary hearing, the petitioner obtained exactly what he wanted.

> . . . .

> Given the facts and circumstances of this case, including but not limited to the fact that the petitioner threatened to harm the jury if he was not sentenced to death, this Court finds beyond a reasonable doubt that no sentencing authority could reasonably have sentenced petitioner to anything other than death regardless of the sentencing procedure employed.

*Ritter v. Smith,* 568 F.Supp. 1499, 1507 and 1509 (S.D.Ala.1983).

ed the development of true facts or resulted in the admission of false ones on a material question involving the sentence. At 856.

If that is the ends of justice test applicable in this case, then the result is the same. The overlap of one of the four statutory aggravating circumstances with the capital offense definition did not preclude the development of any true facts or result in the admission of any false facts regarding any sentence question, whether material or not. The facts concerning the robbery were fully admissible at the guilt and sentence stage of petitioner's trial, irrespective of whether any of the statutory aggravating circumstances overlap with the capital offense definition.

For the reasons stated above, this Court concludes that petitioner's failure to raise the overlap claim in his 1983 habeas petition was the result of deliberate withholding or inexcusable neglect; that his failure to raise it then and his attempt to raise it now constitutes an abuse of the writ; and that the ends of justice do not require that this belatedly raised claim be considered.

Even if it were not barred by the abuse of the writ doctrine, the overlap claim is due to be summarily rejected, anyway. This is not the Eighth Circuit. In *Adams v. Wainwright,* 709 F.2d 1443 (11th Cir. 1983), *cert. denied,* 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984), the defendant had committed a murder during the course of a robbery, and he had been sentenced to death under Florida law, *id.; see, Adams v. State,* 341 So.2d 765, 767 (Fla.1976). One of the statutory aggravating circumstances under Florida's capital punishment statute was that the capital offense "was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, rape, arson, burglary ..." *Proffitt v. Florida,* 428 U.S. 242, 248–49 n. 6, 96 S.Ct. 2960, 2965 n. 6, 49 L.Ed.2d 913 (1976). Four statutory aggravating circumstances were found and considered by the trial court in sentencing Adams, and one of them was that: "Adams committed the

murder during the course of a robbery." *Adams v. State,* 341 So.2d at 769.

In other words, the overlap issue in the *Adams* case was materially identical to the one in this case. Adams, like the petitioner, was convicted of the capital offense of murder during a robbery. In Adams' case, as in this case, there were four statutory aggravating circumstances found, and one of them was that the capital offense involved robbery. Like petitioner, Adams sought federal habeas relief because of the overlap. In rejecting the overlap claim, the Eleventh Circuit held:

Adams also argues that Florida has impermissibly made the death penalty the "automatically preferred sentence" in any felony murder case because one of the statutory aggravating factors is the murder taking place during the course of a felony. The short answer is that the United States Supreme Court has upheld the Florida death penalty statute, including necessarily the use of this statutory aggravating factor. *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Florida does not mandate the death penalty in all felony murder cases. The defendant is not precluded under Florida law from presenting any mitigating factors. *See id.* at 250 n. 8, 96 S.Ct. 1 at 2965 n. 8; *Ford v. Strickland,* 696 F.2d 804, at 812 (11th Cir.1983).

*Adams v. Wainwright, supra,* at 1447 (11th Cir.1983). As in *Adams,* the Supreme Court has upheld the Alabama death penalty statute, including necessarily the use of the statutory aggravating factor now being challenged. *Baldwin v. Alabama,* 472 U.S. 372, 380–81 n. 6, 105 S.Ct. 2727, 86 L.Ed.2d 300, 307–309 & n. 6. *See also, Porter v. Wainwright,* 805 F.2d 930, 943 n. 15 (11th Cir.1986) (rejecting "Porter's claim that the Constitution forbids the trial court's finding that the murders were committed in the course of a robbery as an aggravating circumstance ..."), *cert. denied,* — U.S. ——, 107 S.Ct. 3196, 96 L.Ed.2d 682 (1987). *See also, Lindsey v. Smith,* 820 F.2d 1137, 1153 (11th Cir.1987) (upholding statutory aggravating circumstance that murder occurred during burglary in a burglary-murder case).

Therefore, even if there was not an abuse of the writ bar, binding Eleventh Circuit precedent forecloses petitioner's overlap claim. The law of the Fifth Circuit is in accord. *Moore v. Butler*, 819 F.2d 517, 521 (5th Cir.1987); *Berry v. Phelps*, 819 F.2d 511, 516–17 (5th Cir.1987) ("No circuit court has followed the Eighth Circuit decision in *Collins*, and we have expressly rejected it on several occasions."). *Wilson v. Butler*, 813 F.2d 664, 673–74 (5th Cir.1987); *Welcome v. Blackburn*, 793 F.2d 672, 677 (5th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1985, 95 L.Ed.2d 825 (1987); *Wingo v. Blackburn*, 783 F.2d 1046, 1051 (5th Cir.1986) ("We fail to see why aggravating circumstances narrow the sentencing discretion any less by being made a constituent element of the crime."), *cert. denied*, — U.S. —, 107 S.Ct. 1984, 95 L.Ed.2d 823 (1987).

It is true that the Eleventh Circuit has not felt compelled to discuss the rationale of its prior rejection of the overlap argument at any length. This Court is of the opinion that such rationale is obvious and is aptly illustrated by the Fifth Circuit's analysis in *Welcome v. Blackburn*, 793 F.2d 672 (5th Cir.1986), which is equally applicable to the overlap permitted under Alabama's statute:

Louisiana's inclusion as an element of the crime of first degree murder of the aggravating circumstance of committing multiple murders in a single consecutive course of conduct serves to cull out of the class of all murders, a small group which the State makes eligible for the death penalty. But finding that circumstance present in the course of determining guilt does not fix punishment. *It only serves to permissibly advance the sentencing jury to the stage of weighing mitigating as well as aggravating circumstances in order to make an individualized determination of life or death based on the character of the individual and the circumstances of the crime. Zant v. Stephens*, 462 U.S. 862 [, 103 S.Ct. 2733, 77 L.Ed.2d 235] (1983). *The finding of this aggravating circumstance as a part of the guilt determination process does not finally control the imposition of the death penalty. Such a finding only permits the death penalty to be considered.* Furthermore, we note that the Louisiana Supreme Court has held that a jury is not compelled to find an aggravating circumstance was present merely because it found the accused guilty of murder, *State v. Knighton*, 436 So.2d 1141 (La. 1983), *cert. denied*, 465 U.S. 1051 [, 104 S.Ct. 1330, 79 L.Ed.2d 725] (1984). In short, Louisiana does not enforce the sort of mandatory death penalty statute condemned in *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).

793 F.2d at 677. (Emphasis added). As in Louisiana, the finding of an aggravating circumstance present in the course of determining guilt does not fix punishment under Alabama's statute. It only serves to permissibly advance the sentencing judge to the stage of weighing mitigating as well as aggravating circumstances in order to make an individualized determination of life or death. As in Louisiana, the sentencing judge need not find under Alabama's statute that an aggravating circumstance was present merely because the jury found the accused guilty of robbery when the victim is intentionally killed. The sentencing judge is free to reconsider the aggravating circumstance to insure that it is, in fact, supported by the evidence of record. It is, thus, the balancing of the mitigating and the aggravating circumstances which, in a rational and principled manner, provides a differentiation between members of a subclass, such as robbery-murderers, relative to death eligibility. It is this Court's opinion, therefore, that the discretion afforded the sentencing judge under Alabama's statute is suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action. *Zant v. Stephens*, 462 U.S. 862, 874, 103 S.Ct. 2733, 77 L.Ed.2d 235, 248 (1983), quoting *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

In addition to the clear Eleventh Circuit precedent, this claim is foreclosed by the United States Supreme Court's decision in

*Baldwin v. Alabama,* 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). Baldwin's crime and death sentence, like petitioner's, occurred in 1977. *Id.,* at 373–74 n. 1, 105 S.Ct. at 2729 n. 1. The Supreme Court took that case to review the conflict between the Eleventh Circuit's decision in the present petitioner's first habeas proceeding, *Ritter v. Smith,* 726 F.2d 1505, 1515–17 (11th Cir.), *cert. denied,* 469 U.S. 869, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984), and the Alabama Supreme Court's decision in Baldwin's direct appeal. *Ex parte Baldwin,* 456 So.2d 129 (Ala.1984). The issue was whether the sentencing provisions applied to petitioner and to *Baldwin* were facially unconstitutional. 472 U.S. at 374, 105 S.Ct. at 2729. The Supreme Court upheld the facial constitutionality of the very same sentencing provisions involved in this case, *Baldwin v. Alabama,* 472 U.S. 390, 105 S.Ct. at 2738, and in so doing expressly discussed and to some extent relied upon the very overlap feature which petitioner is attacking. If that overlap feature, which the Supreme Court expressly acknowledged and discussed as a salient feature of the statutory scheme in *Baldwin,* rendered the sentencing provisions unconstitutional as petitioner contends, the Supreme Court would not have upheld the constitutionality of these same sentencing provisions in *Baldwin.*

Even if the Eleventh Circuit precedent and the Supreme Court's *Baldwin* decision did not foreclose petitioner's overlap claim, it is devoid of merit for an entirely different reason. Assuming for purposes of argument only that the overlap of the fourth aggravating circumstance with the capital offense definition was unconstitutional, in this case it is harmless error under *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77

L.Ed.2d 235 (1983). Ironically, one of the best discussions of the applicable law is in the Eleventh Circuit's 1984 opinion in this case:

The import of *Stephens* is clear: a federal harmless error analysis will be applied to a facial constitutional defect in a capital sentencing scheme if, and only if, two criteria are met. First, independent of the invalid factor, the sentencing scheme must limit and channel the sentencer's discretion. Second, the invalid factor must not inject constitutionally impermissible or totally irrelevant considerations into the sentencer's exercise of that discretion. In *Stephens,* both of these criteria were met, and the defendant's death sentence was therefore constitutionally imposed....

726 F.2d at 1518–19 (footnote omitted).

Both *Stephens* factors are met here. The first is established by the Supreme Court's decision in *Baldwin v. Alabama, supra,* that the sentencing provisions are facially constitutional. The second factor is also met, because the fact that the capital offense involved robbery is certainly not a constitutionally impermissible or totally irrelevant consideration in sentencing.[3]

Petitioner's attack on the overlap feature is based in substantial part on a total misapprehension of state law. A central premise in his argument is that, because the aggravating factors are somehow "weighed" against mitigating factors, the process is a numerical one where an actual count of aggravating circumstances is material. As the Supreme Court explained in *Cook v. State,* 369 So.2d 1251 (Ala.1978):

Once all of the proper evidence has been received at the sentencing hearing and arguments have been given, the trial judge must "weighing the aggravating

---

**3.** Contrary to petitioner's assertion, the Eleventh Circuit's 1984 decision in this case did not hold that a finding that one statutory aggravating circumstance was unconstitutional, required that the death sentence be set aside. Instead, the Eleventh Circuit held that the *Stephens* two-prong analysis governed that determination. 726 F.2d at 1516–19. Because the Eleventh Circuit felt that the mandatory jury verdict form requirement was unconstitutional *and* injected a constitutionally impermissible and irrelevant

consideration into the sentencing decision, it held that the death sentence was due to be set aside.

The Eleventh Circuit's holding that the verdict form requirement was unconstitutional was overruled in *Baldwin v. Alabama, supra.* However, the *Stephens* two-prong analysis described by the Eleventh Circuit in 1984 has not been set aside, and under it any overlap error in this case is harmless.

and mitigating circumstances" and sentence the defendant to death or life imprisonment without parole. § 13–11–4, Code of Ala.1975. This "balancing" should not, however, be construed to authorize a "tallying" of items for and against the defendant. We can readily envision situations where several aggravating circumstances may not be sufficient to outweigh only one mitigating circumstance and, on the other hand, where numerous mitigating circumstances may be present but opposed to one aggravating circumstance so outrageous as to justify the death penalty. In conducting these hearings trial judges should keep in mind their ability to order presentence investigations and psychiatric evaluations to obtain a full picture of the defendant.

*Id.,* at 1257. *See also, Code of Alabama 1975,* § 13A–5–48 (effective July 1, 1981) ("a process by which circumstances relevant to sentence are marshalled and considered in an organized fashion for the purpose of determining whether the proper sentence in view of all the relevant circumstances in an individual case is life imprisonment without parole or death").

Petitioner's contention that he could not be sentenced to death unless the trial judge found that one particular aggravating circumstance was sufficient by itself to justify a death sentence also misapprehends Alabama law. As the quotation from *Cook v. State, supra,* makes clear, all the aggravating circumstances are weighed and considered. *See also, Baldwin v. Alabama, supra.*

For all of these reasons, even if petitioner's overlap claim was not barred on abuse of the writ grounds, it must be rejected.

## II. *Ineffective Assistance of Counsel*

In his second claim, petitioner argues that his attorney's failure to advocate a life sentence during the sentencing stage of the trial, in spite of petitioner's instructions to seek a death sentence, constituted ineffective assistance of counsel. In other words, petitioner maintains that a capital murder defendant is constitutionally entitled to an attorney that argues for a life sentence during the sentencing phase even though the defendant has ordered the attorney not to do so.

■ The Court finds that petitioner's failure to raise this claim in his 1983 habeas petition constitutes an abuse of the writ. It is clear that all of the facts relevant to such a claim have been known to petitioner since his trial. Moreover, there existed ample law in 1983 to support such a legal theory. Theories of ineffective assistance of counsel during the sentencing phases of capital murder cases were raised repeatedly in the Eleventh Circuit prior to petitioner's 1983 habeas petition, *See, e.g., Stanley v. Zant,* 697 F.2d 955, 958 (11th Cir.1983), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984); *Proffitt v. Wainwright,* 685 F.2d 1227, 1247–50 (11th Cir. 1982). Petitioner maintains that his theory of ineffective assistance of counsel constitutes a newly evolving legal theory exemplified by cases such as *Thomas v. Kemp,* 796 F.2d 1322 (11th Cir.1986) and *State v. Hightower,* 518 A.2d 482 (N.J.Super.1986). This Court finds, however, that petitioner's claim involves nothing more than a variation of ineffective assistance claims regarding sentencing phases of capital murder proceedings. *Cf. Tucker v. Kemp,* 819 F.2d 978, 980 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 2472, 96 L.Ed.2d 364 (1987). Therefore, petitioner's failure to argue his present claim during his 1983 habeas petition constitutes an abuse of the writ.

■ The "ends of justice" exception to the abuse of the writ doctrine is not applicable in this case. Counsel's actions or inactions did not deprive the trial judge of any significant facts material to the sentencing. As this Court has previously stated: "The petitioner is facing a sentence of death as a result of his own criminal conduct and his having adopted a legal strategy, however unwise, which was adopted freely, knowingly, and voluntarily by the petitioner himself and for which no other person or factor is responsible." *Ritter v. Smith,* 568 F.Supp. 1499, 1507 (S.D.Ala. 1988). For these reasons, the petition should be denied.

■ Even if petitioner has not abused the writ with respect to his ineffective assistance claim, petitioner has waived his claim. Petitioner's conduct in actively pursuing the death penalty at trial and ordering his counsel not to argue mitigating circumstances constitutes waiver of any claims he may have regarding counsel's following of his orders. *See Mitchell v. Kemp,* 762 F.2d 886, 889 (11th Cir.1985). Petitioner attempted to plead guilty and he made it clear to both his counsel and the Court that he wanted to receive the death penalty. He ordered his counsel not to pursue a life sentence. His psychiatric evaluation undermines his present claim that he did not truly understand "the obviously irreversible nature of the death penalty." The psychiatrist found, after an examination done at the request of defense counsel, that

> Mr. Ritter is competent, rational, and able to stand trial. He thoroughly understands the nature and consequences of his actions, and is entirely capable of exercising control and judgment of his conduct.
>
> He sincerely seeks the death sentence, preferring this to a long prison sentence.

Additionally, petitioner indicated at the end of the sentencing hearing that he was satisfied with his counsel's performance. Under these circumstances, the Court concludes that petitioner knowingly and voluntarily waived his sixth amendment rights with respect to any ineffective assistance claims concerning the sentencing phase of his trial.

Assuming arguendo that petitioner has not abused the writ or waived his ineffective assistance claim, the claim is without merit. The Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668, 105 S.Ct. 2452, 80 L.Ed.2d 674 (1984) requires that a criminal defendant alleging ineffective assistance of counsel show (1) that counsel's performance was deficient, falling below "an objective standard of reasonableness," and (2) that the defendant was prejudiced in that he was denied a fair trial with reliable results. *Id.* at 687–88, 104 S.Ct. at 2064. To show prejudice, the defendant "must show that there is a rea-

sonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

■ In the case at bar, the Court is not persuaded that counsel's performance was deficient. Under *Strickland,* this Court is required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 690, 104 S.Ct. at 2066. Moreover, the Court must judge the reasonableness of counsel's challenged conduct on the facts of this particular case, viewed from the time of counsel's conduct. *Id.* 104 S.Ct. at 2066. Under the circumstances of petitioner's trial and sentencing hearing, this Court is not persuaded that defense counsel acted unreasonably or unprofessionally. Counsel knew that the petitioner was actively seeking the death penalty. Counsel also knew, from petitioner's psychiatric report, that petitioner was mentally competent to exercise control and judgment over his case and its ultimate objectives. Counsel's conduct at trial was not outside the range of reasonable professional assistance that would have been rendered by other competent counsel under similar circumstances.

Petitioner's argument that counsel was caught in a conflict of interest between his professional duties and responsibilities and his loyalty to his client's wishes is untenable. If such an argument were accepted, no counsel for petitioner could be free of such a conflict and petitioner could not be constitutionally sentenced. Moreover, the argument assumes the existence of the very duty that petitioner is trying to establish, a professional duty to argue for a life sentence in spite of a client's contrary wishes.

■ Even if counsel's performance was deficient under *Strickland,* petitioner has still failed to establish that he was prejudiced by counsel's failings. In particular, petitioner has not demonstrated that "but for counsel's unprofessional errors, the result of the proceeding would have been different."

In the first component of his prejudice argument, petitioner attacks counsel's failure to object to the trial judge's finding of several allegedly improper aggravating circumstances. Petitioner argues that the judge improperly found that he "knowingly on approximately thirty-nine previous occasions created a great risk of death to many persons." *See Ala.Code* § 13–11–6(3) (1975). This Court disagrees. The Supreme Court has already acknowledged that this particular aggravating circumstance was properly found in the trial of petitioner's codefendant, which also relied on the thirty-nine other robberies and kidnappings they committed. *Alabama v. Evans*, 461 U.S. 230, 233, 103 S.Ct. 1736, 1739, 75 L.Ed.2d 806 (1983) (quoting the Alabama Court of Criminal Appeals at 361 So.2d at 362). In light of petitioner's murder conviction, there can be little doubt that his robbery and kidnapping victims were exposed to a grave risk of death.

Petitioner also argues that two other aggravating circumstances were improperly found because they were based on his robbery conviction as a minor in Indiana. The trial judge found that petitioner "was under sentence of imprisonment although he was serving the remainder of his sentence on parole at the time" and that petitioner "had been previously convicted of another felony involving the use or threat of violence to the person, to-wit: the offense of robbery." *See Ala. Code* § 13–11–6(1) & 6(2) (1975). According to *Baldwin v. Alabama*, 456 So.2d 117, 123–25 (Ala.Crim.App.1983), *aff'd*, 456 So.2d 129 (Ala.1984), *aff'd*, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985), however, youthful offender convictions from other states are to be treated by Alabama courts as they would be in the state of conviction. Thus, because petitioner's prior robbery conviction in Indiana would be treated as a felony in Indiana, *Rodgers v. State*, 422 N.E.2d 1211, 1215 (Ind.1981); *Clay v. State*, 440 N.E.2d 460, 472 (Ind. 1982), it was properly considered at petitioner's sentencing hearing in finding these two aggravating circumstances.

Counsel's failure to object to the finding of the three aggravating circumstances mentioned above clearly does not constitute ineffective assistance, because there were no valid objections to be raised. Moreover, petitioner would not have been prejudiced even if one or more of the objections had been valid. Petitioner's argument is premised upon the contention that: "[i]f any one of these three aggravating circumstances was, in fact, invalid, Mr. Ritter would not have been sentenced to death under Alabama law. Prior to 1984 in Alabama, death sentences were automatically reversed in an automatic appeal in a capital case if one statutory aggravating circumstance was found to be invalid." That connection is founded on several misapprehensions of law and fact. First, as *Baldwin v. Alabama*, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985), makes clear, the only aggravating circumstance essential to a death sentence under the Alabama statute is the one which overlaps with the capital offense definition. The existence of that aggravating circumstance—that the capital offense involved robbery—is undisputed and undisputable.

Second, asking what would have happened if an aggravating circumstance had been found to be invalid on appeal misses the point. If counsel's performance had been different at the sentencing stage and if that difference had resulted in one of the four aggravating circumstances being shown to be invalid, a death sentence could still have been imposed by the trial court, and it would have been imposed in view of all the circumstances including petitioner's own behavior. In other words, even assuming petitioner could have demonstrated the invalidity of at least one of the aggravating circumstances, such a demonstration would have convinced the trial court not to find and rely on that aggravating circumstance. Therefore, there would have been no improperly found aggravating circumstance upon which an appellate court could have based a reversal and a remand of the sentence.

Third, even if a different performance by petitioner's counsel at trial might somehow have resulted in a reversal of the death

sentence because of an appellate court finding that one of the aggravating circumstances was invalid or improperly found, that still would not have been prevented the trial court from resentencing petitioner to death on remand.

Therefore, petitioner's contention that he was prejudiced because trial counsel could have demonstrated the invalidity of one or more of the statutory aggravating circumstances is based on a misunderstanding of what would have happened if one of the three "other" statutory aggravating circumstances had been found to be inapplicable. Petitioner's contention also fails because none of the three "other" statutory aggravating circumstances were invalid or improperly applied in this case. There was nothing petitioner's counsel could have done to prevent the sentencing judge from finding and considering each of the aggravating circumstances, therefore, petitioner was not prejudiced by anything his counsel did or failed to do concerning them.

■■■ The second component of petitioner's prejudice argument is his contention that he was prejudiced by his counsel's failure to make a closing argument at the sentence stage. That component is also without basis in law or fact. Petitioner's argument that the result of the sentence proceeding would have been different had his attorney "told the judge that Mr. Ritter's sole prior conviction was as a minor," ignores the fact that the judge was aware of that from the documentary evidence introduced at the sentence stage. Petitioner's argument that his counsel should have asked the judge to consider the possibility that his desire to die was not the product of "mature consideration" ignores the fact that petitioner was 23 years of age, and that a psychiatrist had found that he thoroughly understood the nature and consequences of his actions and he "sincerely seeks the death sentence, preferring this to a long prison sentence." (Tr. 94–95, 259).

Petitioner's argument that his trial counsel should have focused the court's attention on his "acceptance of responsibility for his crimes" and his willingness to plead guilty ignores the fact that petitioner

showed no remorse whatsoever for his conduct. Instead, his acceptance of responsibility and willingness to plead guilty were part of his desire to boast about his crime and achieve notoriety from it. Petitioner's argument that his trial counsel did not point out that he was not the triggerman ignores the fact that the judge was obviously ware of that, and indeed he expressly mentioned it in his sentence findings. *See, Evans v. State*, 361 So.2d 654 (Ala.Cr.App. 1977). Petitioner's contention that his counsel should have argued that petitioner being on parole from a robbery conviction as a minor did not justify a death sentence ignores the three dozen other violent felonies about which petitioner boasted.

■■■ Petitioner's argument that his counsel should have made a "simple plea for mercy" ignores the possibility, even probability, that petitioner would have reacted negatively to such a plea and could have taken steps to counteract it. Petitioner had already threatened to harm the jury if he was not sentenced to death, and he could just as easily have extended that threat to the trial judge if he thought it necessary to do so in order to counteract his counsel's argument. In any event, it flies in the face of reality to think that such a "simple plea" could have undone the effect of everything that petitioner had done to ensure a death sentence.

Because petitioner has failed to establish that his counsel's performance was professionally deficient in view of all the circumstances and because petitioner has utterly failed to demonstrate any prejudice from his counsel's action or inaction, petitioner's ineffective assistance claim is without merit.

Petitioner has requested a stay of execution pending the adjudication of his habeas claims. In considering the question of whether or not to stay execution under 28 U.S.C. § 2251, a district court should consider (1) whether a petitioner has made a showing that he is likely to succeed on the merits, and (2) that he will suffer irreparable injury if the stay is not granted; (3) that the stay will not substantially harm other parties; and (4) that the granting of the stay would serve the public interest.

*Bundy v. Wainwright,* 808 F.2d 1410, 1421 (11th Cir.1987).

Based on its analysis of the issues in this petition this Court concludes that petitioner is procedurally barred and his claims lack substantive merit, therefore, his petition is not likely to succeed on the merits. The public interest will be served by reaching a final decision in this case which has been pending in the courts since 1977. The Court cannot conclude that a denial of the motion for a stay will disserve the public interest. The record does not indicate that other parties would be injured by denying the stay and the obvious irreparable harm that will inure to the petitioner should the stay not be granted does not outweigh the "merits" and "public interest" factors. Therefore, petitioner's motion for a stay of execution is DENIED.

## ORDER

For the reasons stated above, it is hereby ORDERED that a judgment be entered in favor of the State of Alabama and against the petitioner, Wayne E. Ritter, that this cause be dismissed with prejudice, and that petitioner's motion for a stay of his execution be DENIED.

