869 F.2d 1377
 Charles Troy COLEMAN, Petitioner-Appellant,
v.
James SAFFLE, Warden, Oklahoma State Prison, Larry Meachum,
Director, Department of Corrections, and Attorney
General of the State of Oklahoma, Robert
Henry, Respondents-Appellees.
 No. 87-2011.
 United States Court of Appeals,
Tenth Circuit.
 March 6, 1989.
 
 Mandy Welch of Payne & Welch, Hugo, Okl. (John Thomas Hall, Tulsa, Okl., with her on the briefs) for petitioner-appellant.
 David W. Lee, Asst. Atty. Gen., Chief, Crim. & Federal Divisions (Robert H. Henry, Atty. Gen. of Oklahoma, Susan Stewart Dickerson, Asst. Atty. Gen., Deputy Chief, Crim. Div., M. Caroline Emerson, Sandra D. Howard, and Michael W. Elliott, Asst. Attys. Gen., with him on the briefs) State of Okl., Okl. City, Okl., for respondents-appellees.
 Before HOLLOWAY, Chief Judge, and LOGAN and SEYMOUR, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Petitioner, Charles Troy Coleman, is under a sentence of death as a result of an Oklahoma state court conviction for first-degree murder. In this, his second federal petition for habeas corpus relief, Coleman argues that this court must vacate his death sentence because of the following alleged constitutional errors: (1) the sentencing jury found one of five aggravating circumstances was present--that the murder was "especially heinous, atrocious, or cruel"--after it was instructed in an unconstitutional manner; (2) this court's invalidation of Oklahoma's application of the "heinous, atrocious, or cruel" circumstance renders some of the evidence introduced at Coleman's sentencing hearing constitutionally inadmissible; (3) the trial court's anti-sympathy instruction at the sentencing stage unconstitutionally diverted the jury from fully considering mitigating evidence; and (4) certain statements by the prosecutor and photographs allowed into evidence at the guilt stage constituted comments about the victim in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). The district court denied relief.
 
 
 2
 The facts of this case are set out in our opinion affirming an earlier denial of habeas relief. See Coleman v. Brown, 802 F.2d 1227 (10th Cir.1986) (Coleman I ), cert. denied, 482 U.S. 909, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987). We will repeat here only such facts as are necessary to an understanding of the issues we must decide.
 
 
 3
 In 1979, an Oklahoma jury convicted Coleman of first degree murder and, after hearing evidence produced at a separate sentencing hearing, determined that all five of the statutory aggravating circumstances alleged by the state were present. The jury then sentenced Coleman to death. One of the aggravating circumstances found by the jury was that the murder was "especially heinous, atrocious, or cruel." See Okla.Stat.Ann. tit. 21, Sec. 701.12(4).[1]
 
 
 4
 The Oklahoma Court of Criminal Appeals affirmed Coleman's conviction and sentence. Coleman v. State, 668 P.2d 1126 (Okla.Crim.App.1983), cert. denied, 464 U.S. 1073, 104 S.Ct. 986, 79 L.Ed.2d 222 (1984). Coleman then filed an application for post-conviction relief in an Oklahoma state district court. That court's denial of relief was affirmed on appeal. Coleman v. State, 693 P.2d 4 (Okla.Crim.App.1984). He next turned to the federal courts for habeas corpus relief, and this court affirmed the denial of his petition. Coleman I, 802 F.2d 1227.
 
 
 5
 Coleman thereafter filed a second habeas petition in state district court, whose denial of relief was affirmed in an unpublished order by the Court of Criminal Appeals. While his state petition was still pending, Coleman filed another habeas application in federal district court, raising numerous issues. When the district court denied relief, he appealed to this court. We granted a stay of execution pending the resolution of the appeal.
 
 
 6
 * Abuse of the Writ
 
 
 7
 Coleman's first allegation of constitutional error is that the jury imposed the death sentence after receiving an unconstitutional instruction regarding the aggravating circumstance that the murder was "especially heinous, atrocious, or cruel." See Cartwright v. Maynard, 822 F.2d 1477 (10th Cir.1987) (en banc), aff'd, --- U.S. ----, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (holding unconstitutional Oklahoma's construction and application of this circumstance).
 
 
 8
 Before we reach the merits of this contention, we must address whether procedural rules bar our consideration of the claim. The state argues that because Coleman should have raised this issue earlier, he has abused his right to apply for a writ of habeas corpus, and we should dismiss this part of the petition without reaching its merits.[2] Accepting this argument, the district court dismissed the current petition.
 
 
 9
 A federal court may dismiss a subsequent or successive petition for a writ of habeas corpus if "it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." 28 U.S.C. foll. Sec. 2254 Rule 9(b). This rule is repeated in slightly different words in 28 U.S.C. Sec. 2244(b), which states that a court need not consider a petition unless it "alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ."
 
 
 10
 These "abuse of the writ" rules were developed to give finality to judgments, while permitting petitioners the greatest possible opportunity to vindicate their constitutional rights. See Kuhlmann v. Wilson, 477 U.S. 436, 451-52, 106 S.Ct. 2616, 2625-26, 91 L.Ed.2d 364 (1986) (plurality opinion). In our analysis, we must distinguish between claims raised and reached on the merits in an earlier habeas petition, referred to as "successive petitions," and claims raised for the first time in a subsequent petition. Id., 477 U.S. at 444 n. 6, 106 S.Ct. at 2622 n. 6.
 
 
 11
 In arguing that we should not consider Coleman's claim, the state, relying on Kuhlmann, asserts that a court should consider a petitioner's second petition only when "the prisoner supplements his constitutional claim with a colorable showing of factual innocence." Kuhlmann, 477 U.S. at 454, 106 S.Ct. at 2627. But Kuhlmann was a successive petition case; the Supreme Court has never indicated its "factual innocence" test should apply to subsequent petitions raising new claims. Further, the factual innocence test only applies when the petitioner is relying on the "ends of justice" doctrine to mandate consideration of the claims. Id., 477 U.S. at 451, 454, 106 S.Ct. at 2625, 2627; see Sanders v. United States, 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963) (prior denial of petition bars later claim if same ground was previously presented and determined adversely to petitioner, prior decision was on the merits, and ends of justice would not be served by deciding petition on merits). Because Coleman's allegation regarding the heinous, atrocious, or cruel circumstance was neither presented nor decided in his first federal habeas action, we need not apply the factual innocence criteria or the three-part Sanders test.
 
 
 12
 Even though Coleman has not previously raised the invalid aggravating circumstance argument, his claim still may be barred. Rule 9(b) and 28 U.S.C. Sec. 2244 mandate that the courts should dismiss subsequent petitions when the petitioner has offered no reasonable explanation why he did not raise his claim in the earlier application. See Kuhlmann, 477 U.S. at 444 n. 6, 106 S.Ct. at 2622 n. 6 (because habeas relief is of an "equitable nature," petitioner's subsequent application may be dismissed, though it raises new issues, if petitioner has acted to disqualify himself from relief); Sanders, 373 U.S. at 10, 83 S.Ct. at 1074. Specifically, Coleman must show that he or his counsel in the earlier petition did not intentionally abandon or inexcusably neglect the new claim, Witt v. Wainwright, 755 F.2d 1396, 1397 (11th Cir.), cert. denied, 470 U.S. 1039, 105 S.Ct. 1415, 84 L.Ed.2d 801 (1985), and that he did not deliberately withhold the claim or at least has a good reason for not previously raising it. Woodard v. Hutchins, 464 U.S. 377, 379 & n. 3, 104 S.Ct. 752, 753 n. 3, 78 L.Ed.2d 541 (1984) (Powell, J., concurring, joined by four other justices). Coleman can satisfy part of this burden by showing, by a preponderance of the evidence, that he did not know of the specific legal or factual grounds for the claim when he filed his earlier petition, Booker v. Wainwright, 764 F.2d 1371, 1376 (11th Cir.), cert. denied, 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985), or that the law has changed since the earlier petition, Sanders, 373 U.S. at 17, 83 S.Ct. at 1078; Tucker v. Kemp, 818 F.2d 749, 752 (11th Cir.1987). But even if the law has changed since the earlier petition, Coleman also must show that he or his attorney reasonably should not have been aware of the possibility or legal basis for such a claim. Bowden v. Kemp, 793 F.2d 273, 275 & n. 4 (11th Cir.), cert. denied, 477 U.S. 910, 106 S.Ct. 3289, 91 L.Ed.2d 576 (1986); Moore v. Blackburn, 774 F.2d 97, 98 (5th Cir.1985), cert. denied, 476 U.S. 1176, 106 S.Ct. 2904, 90 L.Ed.2d 990 (1986).
 
 
 13
 Once the state adequately raises the abuse of the writ issue with clarity and particularity, as the state did in this case, the burden shifts to the petitioner to show, by a preponderance of the evidence, that he has not abused the writ procedure. Price v. Johnston, 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948); Jones v. Estelle, 722 F.2d 159, 164 (5th Cir.1983), cert. denied, 466 U.S. 976, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984); 28 U.S.C. foll. Sec. 2254 Rule 9 Advisory Committee Notes. Coleman ultimately bears the burden of persuasion, and the Supreme Court plainly has instructed federal courts to dismiss petitions, even in capital cases, when petitioners fail to prove that they have not abused the writ. Antone v. Dugger, 465 U.S. 200, 206, 104 S.Ct. 962, 964, 79 L.Ed.2d 147 (1984); Woodard, 464 U.S. at 379, 104 S.Ct. at 753. Nevertheless, we must remember that when a man's life is at stake and he has not had federal review of the alleged constitutional defects in his conviction and sentence, we should be reluctant to hold that his misconduct is grave enough to warrant the sanction of dismissal of his petition. See Potts v. Zant, 734 F.2d 526, 529 (11th Cir.1984), cert. denied, 475 U.S. 1068, 106 S.Ct. 1386, 89 L.Ed.2d 610 (1986).
 
 
 14
 Coleman argues that this court's decision in Cartwright v. Maynard, 822 F.2d 1477 (10th Cir.1987), and the Supreme Court's subsequent affirmance in Maynard v. Cartwright, --- U.S. ----, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), constitute an intervening change in the law, not reasonably foreseen by Coleman or his counsel at the time of the first habeas application. Those decisions hold that Oklahoma's application of the statutory aggravating circumstance that the murder was "especially heinous, atrocious, or cruel," Okla.Stat.Ann. tit. 21, Sec. 701.12(4), was unconstitutionally overbroad and vague. Cartwright, 822 F.2d at 1491-92, Maynard, 108 S.Ct. at 1859. As noted, this circumstance was one of five found beyond a reasonable doubt by the jury in this case.
 
 
 15
 It cannot reasonably be disputed that our decision in Cartwright was a new and significant development in Oklahoma law. The real question, therefore, is whether Coleman's counsel[3] reasonably could have been expected to raise the issue in the first petition and argue for a change in the law. Here we hold that Coleman and his counsel acted reasonably in not challenging, in the first habeas petition, the heinous, atrocious, or cruel instruction and its application to Coleman. Although our holding in Cartwright is well supported by precedent, neither this court nor the Oklahoma courts previously had given any reliable indication that the state's construction of this particular circumstance might be invalid. In fact, the Oklahoma courts repeatedly had rejected, often summarily, the assertion that the state's construction of this circumstance was unconstitutional. See, e.g., Liles v. State, 702 P.2d 1025, 1031-32 (Okla.Crim.App.1985), cert. denied, 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986); Cartwright v. State, 695 P.2d 548, 555 n. 6 (Okla.Crim.App.), cert. denied, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985); Davis v. State, 665 P.2d 1186, 1202 (Okla.Crim.App.), cert. denied, 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983). Arguably, Coleman's counsel should have been aware of the possibility of making such a claim, as counsel in Cartwright certainly was. Yet, by looking at the objective factors, such as the previous failure of any court or judge to indicate that Oklahoma's construction might be unconstitutional, we hold that Coleman had good reason for not raising this claim in his first petition, and his present challenge is not barred by the abuse of the writ doctrine. The district court erred in concluding to the contrary.[4]
 
 II
 Procedural Default
 
 16
 The state next contends that because Coleman failed to raise his heinous, atrocious, or cruel circumstance claim at trial or on direct appeal, which it contends is required by state law, he is foreclosed from raising it now. See Wainwright v. Sykes, 433 U.S. 72, 86-87, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977). In Sykes, the Supreme Court held that a federal habeas court is precluded from reviewing a state prisoner's allegation of constitutional error if the state court has declined to review the claim due to the petitioner's failure to comply with a state contemporaneous objection rule. Id., 433 U.S. at 85-86, 97 S.Ct. at 2505-06 More specifically, it held that a petitioner's "failure to timely object to [the alleged error] amounted to an independent and adequate state procedural ground which would have prevented direct review here" and thus precluded habeas corpus review as well. Id. at 87, 97 S.Ct. at 2506.[5]
 
 
 17
 Oklahoma has codified the following procedural rule:
 
 
 18
 "All grounds for relief available to an applicant under [the post-conviction relief act] must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the prior application."
 
 
 19
 Okla.Stat.Ann. tit. 22, Sec. 1086. The state urges application of this rule to dismiss Coleman's petition. The state district court, considering the alleged constitutional error now before us, apparently agreed. When Coleman filed his second application in state district court, that court stated that the claim "was not raised in this particular case, it's my understanding. It could have been raised, but it wasn't raised, so by reason therefore then the doctrine of res judicata will apply, so that proposition will be overruled." Coleman v. Saffle, No. CRF-79-76, transcript of hearing at 145 (D. Muskogee County, Okla., July 9, 1987), III R.Doc. 12. The Court of Criminal Appeals affirmed on the same grounds. Coleman v. Saffle, No. H-79-508, unpublished order (Okla.Crim.App. July 15, 1987), III R.Doc. 12.
 
 
 20
 Thus, the Oklahoma state courts have held that Coleman's invalid aggravating circumstance claim is barred by a state procedural rule. We must respect the state's interpretation of its own rules. Yet, the Supreme Court has " 'consistently held that the question of when and how defaults in compliance with state procedural rules can preclude our consideration of a federal question is itself a federal question.' " Johnson v. Mississippi, --- U.S. ----, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988) (quoting Henry v. Mississippi, 379 U.S. 443, 447, 85 S.Ct. 564, 567, 13 L.Ed.2d 408 (1965)). As a partial answer to that question, the Court has held that a state procedural rule must be "independent and adequate" before it bars federal review; and, a state rule is not "adequate" unless it is "strictly or regularly followed." Hathorn v. Lovorn, 457 U.S. 255, 262-63, 102 S.Ct. 2421, 2426-27, 72 L.Ed.2d 824 (1982); see also Johnson, 108 S.Ct. at 1987; Barr v. City of Columbia, 378 U.S. 146, 149, 84 S.Ct. 1734, 1736, 12 L.Ed.2d 766 (1964); see also Runnels v. Hess, 653 F.2d 1359, 1366 (10th Cir.1981) (Logan, J., concurring and dissenting) (Sykes does not alter rule that a federal court may review a federal claim, even in face of a state procedural bar, if state rules "are unreasonable on their face or are unreasonably or inconsistently applied").
 
 
 21
 We conclude that the procedural rule requiring a criminal defendant to raise all issues contemporaneously and on direct appeal is not "strictly followed" in Oklahoma when a ruling of the Supreme Court or a federal appellate court binding in the jurisdiction changes the law after the petitioner's earlier appeal. See Hathorn, 457 U.S. at 263, 102 S.Ct. at 2426 (to bar federal court review, procedural rule must be applied "evenhandedly to all similar claims"); Wheat v. Thigpen, 793 F.2d 621, 626-27 (5th Cir.1986), cert. denied, 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987).
 
 
 22
 For example, in Stewart v. State, 495 P.2d 834, 836 (Okla.Crim.App.1972), the Oklahoma Court of Criminal Appeals ruled that a habeas petitioner's claim of trial error based on Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), was not barred "since defendant is asserting a claim which did not exist at the time of his [direct] appeal." The court stated that because the Supreme Court had not yet decided Burgett at the time of petitioner's trial, he had offered a "sufficient reason" under Okla.Stat.Ann. tit. 22, Sec. 1086 for not asserting the claim on direct appeal. Stewart, 495 P.2d at 836.
 
 
 23
 In Jones v. State, 704 P.2d 1138, 1140 (Okla.Crim.App.1985), the court stated that a petitioner could raise at the post-conviction stage new grounds for relief if "a 'sufficient reason' prevented the assertion of the error at trial or on direct appeal, such as a subsequent change in the law affecting the petitioner's case." (emphasis added). The court made this statement while reaffirming the general rule that "if an issue is bypassed on direct appeal, it may not be asserted on application for post-conviction relief." Id. at 1140.
 
 
 24
 In Cartwright v. State, 708 P.2d 592, 594 (Okla.Crim.App.1985), cert. denied, 474 U.S. 1073, 106 S.Ct. 837, 88 L.Ed.2d 808 (1986), the court held that
 
 
 25
 "we consider a constitutional argument, raised for the first time on application for post-conviction relief where the constitutional remedy was unavailable at trial or on direct appeal. In such a case a 'sufficient reason' has been stated for the failure to present the issue on direct appeal."
 
 
 26
 The court there considered the merits of the petitioner's claim based on Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), which had been decided after the petitioner's direct appeal. Cartwright, 708 P.2d at 595.[6]
 
 
 27
 Thus, we conclude that Oklahoma has not "strictly followed" its contemporaneous objection rule embodied in Okla.Stat.Ann. tit. 22, Sec. 1086, and that by barring Coleman's claim while allowing the claims pressed in cases such as Stewart, Jones and Cartwright, it has inconsistently applied its "sufficient reason" exception. Oklahoma's rule, therefore, is not "adequate" to preclude our review of Coleman's claim, and we proceed to its merits. See Hathorn, 457 U.S. at 262-63, 102 S.Ct. at 2426-27.
 
 III
 
 28
 * Erroneous Aggravating Circumstance
 
 
 29
 Coleman argues that this court must vacate his death sentence because, at the sentencing phase of his trial, the court gave the jury an unconstitutional instruction regarding the aggravating circumstance that the murder was "especially heinous, atrocious, or cruel." In Cartwright v. Maynard, 822 F.2d 1477 (10th Cir.1987) (en banc), we held that even though the "especially heinous, atrocious, or cruel" circumstance survived a facial invalidity challenge, Oklahoma had applied it in an unconstitutional manner. Id. at 1488-91. The Oklahoma courts' construction was overbroad and did not adequately channel the jury's sentencing discretion as required by Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), and other Supreme Court decisions. Cartwright, 822 F.2d at 1487, 1491. The Supreme Court agreed with our holding and affirmed our judgment in Maynard v. Cartwright, --- U.S. ----, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).
 
 
 30
 Just as in Cartwright, the trial court and the Court of Criminal Appeals in the present case failed to apply the constitutionally required narrowing criteria to the "heinous, atrocious, or cruel" circumstance. The trial court here gave virtually the same jury instruction given in Cartwright.[7] The state makes no showing that the Court of Criminal Appeals applied any more rigid review of the circumstance's application in Coleman's case than it did in Cartwright's case. Thus, the Oklahoma trial court and the Court of Criminal Appeals unconstitutionally applied the "heinous, atrocious, or cruel" circumstance here.
 
 
 31
 The question remains whether we should apply harmless error analysis in these circumstances. In Cartwright, we did not engage in such analysis; we simply vacated that petitioner's death sentence and remanded to the Oklahoma courts for further proceedings. 822 F.2d at 1482-83, 1492. But we did so because at that time the Oklahoma courts refused to reweigh aggravating and mitigating circumstances once one aggravating circumstance relied on by the jury was declared invalid. Id. at 1482-83.
 
 
 32
 Oklahoma law, however, has changed. In Stouffer v. State, 742 P.2d 562, 563 (Okla.Crim.App.1987), cert. denied, --- U.S. ----, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988), the Court of Criminal Appeals reinterpreted the "heinous, atrocious, or cruel" circumstance so that a murder must involve "torture or serious physical abuse" before a jury may find that the circumstance exists. It also ruled that, applying its new, stricter interpretation, it should reweigh the remaining aggravating circumstances against any mitigating evidence, and decide if the evidence still warranted a death sentence. Id. at 564. The court held that its previous rule had been
 
 
 33
 "unnecessarily deferential in light of the authority and responsibility given this Court by the Legislature to review capital sentences.... [T]his Court must make a sentence review which includes factual substantiation of the verdict and determining the validity of the sentence. A weighing of the aggravating circumstances versus mitigating factors is implicit to such a review."Id. (citation omitted). It then went on to determine that, in light of the overwhelming evidence of guilt and the jury's rejection of that defendant's theories, the unconstitutional submission of the heinous, atrocious, or cruel circumstance "was at most harmless error." Id.; see also Castro v. State, 745 P.2d 394, 408-09 (Okla.Crim.App.1987) (evidence insufficient to support heinous, atrocious, or cruel circumstance, but death penalty still "substantiated and valid" in light of prosecution's overwhelming evidence and remaining circumstance that defendant constituted continuing threat to society), on rehearing, 749 P.2d 1146, cert. denied, --- U.S. ----, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988). Thus, Oklahoma reviewing courts, in cases in which the jury has considered an invalid aggravating circumstance, now apply harmless error analysis and also reweigh the evidence to determine if the death penalty continues to be warranted.
 
 
 34
 We must accept Oklahoma's interpretation of its own law--that a death penalty is not automatically vacated when the jury found an invalid aggravating circumstance, and that the rule applies to persons convicted before the new interpretation--unless this interpretation violates federal constitutional rights. We do have to determine two federal constitutional issues, because they directly affect the remedy we may order in this case: (1) whether application of the new state rule, that death sentences are not automatically vacated, is constitutionally invalid, under ex post facto principles, when applied to one like Coleman, convicted before Stouffer 's reinterpretation; and, if not, (2) whether harmless-error analysis is applicable to the submission of the invalid aggravating circumstance.
 
 B
 Due Process--Ex Post Facto Issue
 
 35
 The Oklahoma Court of Criminal Appeals has ruled that the decision to reweigh does not constitute an ex post facto law, even though applied to petitioners convicted before the Stouffer decision. Castro, 749 P.2d at 1150. The Castro court held that Stouffer merely interpreted a statute that was in effect when the crimes were committed, and does not "criminalize conduct which was innocent when done, nor ... make the crime greater than when it was committed." Id. Soon after Castro, however, the Court of Criminal Appeals held that, as applied to defendants convicted before its enactment, an Oklahoma statute allowing the court to remand for resentencing when a defendant's death sentence was imposed unconstitutionally was an ex post facto law because it permitted reinstitution of a death sentence, a result not possible under prior court-made rule. Dutton v. Dixon, 757 P.2d 376, 379 (Okla.Crim.App.1988). The Dutton court distinguished Castro without discussion.
 
 
 36
 Coleman's constitutional rights here derive from the Due Process Clause because the law change at issue was by judicial construction; the prohibition against ex post facto laws applies only to legislative enactments. Marks v. United States, 430 U.S. 188, 191-92, 97 S.Ct. 990, 992-93, 51 L.Ed.2d 260 (1977); Devine v. New Mexico Dep't of Corrections, 866 F.2d 339, 342, 344 (10th Cir.1989). Nevertheless, "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law," Bouie v. City of Columbia, 378 U.S. 347, 353, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964), so we apply ex post facto principles to decide the due process issue. The critical test, as stated in recent Supreme Court cases, is whether, as applied, the change impairs "substantial personal rights," or merely changes "modes of procedure which do not affect matters of substance." Dobbert v. Florida, 432 U.S. 282, 293, 97 S.Ct. 2290, 229, 53 L.Ed.2d 344 (1977) (quoting Beazell v. Ohio, 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925)); see also Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987); United States v. Affleck, 765 F.2d 944, 948 (10th Cir.1985) (en banc) (no ex post facto violation if new law is merely procedural and does not increase punishment for, or change the elements of, an offense, or alter facts necessary to establish guilt).
 
 
 37
 An unforeseeable[8] judicial interpretation that makes a crime greater than when it was committed, Bouie, 378 U.S. at 353, 84 S.Ct. at 1702, or that inflicts a greater punishment than the law permitted when the crime was committed, Miller, 107 S.Ct. at 2450, violates ex post facto principles and a defendant's due process rights. Does the change at issue before us--the decision that death sentences are no longer automatically vacated when the jury has found an invalid aggravating circumstance--affect Coleman's substantive rights by making his crime greater or inflicting greater punishment than when the murder was committed? The crime was then and still is first degree murder, and death was and still is the maximum punishment for the crime. Facially, Stouffer does not aggravate Coleman's crime or increase his punishment.
 
 
 38
 In Weaver v. Graham, 450 U.S. 24, 29-30 & n. 12, 101 S.Ct. 960, 964-65 & n. 12, 67 L.Ed.2d 17 (1981), the Supreme Court stated the ex post facto test in terms of whether the change in law "disadvantage[s]" the defendant. That language is also in older Supreme Court cases. See, e.g., Kring v. Missouri, 107 U.S. (17 Otto) 221, 27 L.Ed. 506 (1883). In a sense, the change wrought by Stouffer disadvantages the offender, who under the earlier Oklahoma court interpretations would have his death sentence automatically reduced to life imprisonment upon establishing that the jury found an erroneous mitigating circumstance. An offender, however, does not win his ex post facto argument by proving disadvantage alone. See, e.g., Beazell v. Ohio, 269 U.S. 167, 170-71, 46 S.Ct. 68, 68-69, 70 L.Ed.2d 216 (1925); Hopt v. Utah, 110 U.S. 574, 589-90, 4 S.Ct. 202, 209-10, 28 L.Ed. 262 (1884).
 
 
 39
 As we recognized in Affleck, even a change in the law that "seriously disadvantages" a defendant is not prohibited by the Ex Post Facto Clause if it affects only matters of procedure and does not "impose[ ] a punishment for an act which was not punishable at the time it was committed; or impose[ ] additional punishment to that then prescribed; or change[ ] the rules of evidence by which less or different testimony is sufficient to convict than was then required." 765 F.2d at 948, 949 (quoting Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 325-26, 18 L.Ed. 356 (1867)). In Affleck, we viewed the modern Supreme Court cases as modifying the absolute-sounding words of Kring and other decisions, and stated that the true focus of ex post facto analysis is on "the elements of the offense, the conditions and quantum of punishment, and the quantity and degree of proof necessary to establish guilt." 765 F.2d at 950.
 
 
 40
 In the one modern Supreme Court case involving the application of ex post facto principles to the death penalty, Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), the Court upheld against ex post facto challenge application of a new Florida death penalty statute changing the functions of judge and jury as applied to one who committed the crime before the statute's enactment. The prior statute required the death sentence unless a majority of the jury recommended mercy. The revised statute left sentencing to the trial judge, with the jury rendering an advisory opinion. Id. at 289-91, 97 S.Ct. at 2296-97. The jury recommended that Dobbert receive a life sentence but, as allowed under the new statute, the trial judge sentenced him to death. The Supreme Court found the changes to be procedural because " '[t]he crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent [change in the law].' " Id. at 294, 97 S.Ct. at 2298 (quoting Hopt v. Utah, 110 U.S. 574, 589-90, 4 S.Ct. 202, 209-10, 28 L.Ed. 262 (1884)). The Court rejected the argument that petitioner's punishment was increased because there was no valid death penalty in Florida when he committed the crime, that statute having been held unconstitutional,[9] as a "sophistic argument [that] mocks the substance of the Ex Post Facto Clause." Id., 432 U.S. at 297, 97 S.Ct. at 2300. The Court said that because a statute existed at the time the defendant committed the crime which mandated death as an appropriate penalty for murder, the defendant had "fair warning" of the crime's consequences. Id.
 
 
 41
 In the instant case, as in Dobbert, the state statute in effect at the time Coleman committed the murder allowed death as a possible punishment; and the quantity or the degree of proof necessary to establish guilt were unchanged by Stouffer. Stouffer effected only a procedural change in the way the Oklahoma Court of Criminal Appeals carries out its statutorily-required review of death sentences. A procedural change in the law, even if it is to the petitioner's disadvantage, is not a constitutionally prohibited ex post facto law. Dobbert, 432 U.S. at 293-94, 97 S.Ct. at 2298-99 (law not ex post facto because it "simply altered the methods employed in determining whether the death penalty was to be imposed"); Beazell, 269 U.S. at 170-71, 46 S.Ct. at 68-69; Affleck, 765 F.2d at 948. Therefore, applying the Stouffer reinterpretation to Coleman's case is not an invalid application of an ex post facto law.[10]
 
 C
 Harmless Error
 
 42
 The state's principal argument concerning the invalidly applied "heinous, atrocious, or cruel" circumstance is that it was harmless error beyond a reasonable doubt. In Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the Supreme Court held that because the Georgia statute did not require the sentencer to weigh aggravating and mitigating evidence, the state supreme court properly could allow a death sentence to stand, even after invalidating one or more aggravating circumstances, provided one circumstance remained. Id., 462 U.S. at 874, 890, 103 S.Ct. at 2741, 2749. The Zant Court specifically left open the question whether, in the context of a sentencing scheme requiring the sentencer to weigh aggravating circumstances and mitigating evidence, as the Oklahoma statute does, see Okla.Stat.Ann. tit. 21, Sec. 701.11, a federal constitutional error could be harmless. Zant, 462 U.S. at 873 n. 12, 890, 103 S.Ct. at 2741 n. 12, 2749. We face that question here, and hold that it may.
 
 
 43
 Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), went a long way toward resolving the question left open in Zant. Under Florida law the trial judge makes the ultimate decision on death, and the judge may not consider nonstatutory aggravating circumstances. Id., 463 U.S. at 956, 103 S.Ct. at 3428. In Barclay, the judge did consider an improper aggravating circumstance, yet the Florida Supreme Court upheld his imposition of the death sentence, applying harmless-error analysis. The United States Supreme Court affirmed, holding that even though the statute required the sentencer to weigh aggravating and mitigating evidence, the sentencer's consideration of the invalid circumstance did not "so infect[ ] the balancing process created by the Florida statute that it is constitutionally impermissible for the Florida Supreme Court to let the sentence stand." Barclay, 463 U.S. at 956, 103 S.Ct. at 3428 (plurality opinion). Although the error there was one of state law, the Court summarized its holding in terms not confined to state law errors: "There is no reason why the Florida Supreme Court cannot examine the balance struck by the trial judge and decide that the elimination of improperly considered aggravating circumstances could not possibly affect the balance." Id. at 958, 103 S.Ct. at 3429. Justices Stevens and Powell, whose votes were necessary to make a majority, concurred in the judgment and focused on the procedural protections of the Florida statute, which they found constitutionally adequate. Id. at 960, 969-70, 103 S.Ct. at 3430, 3434-36 (Stevens, J., concurring in the judgment).
 
 
 44
 In another recent case, the Supreme Court vacated a death sentence only after it concluded that the constitutional error at the sentencing proceeding was prejudicial, and did not involve the "mere invalidation of an aggravating circumstance." Johnson v. Mississippi, --- U.S. ----, 108 S.Ct. 1981, 1988, 100 L.Ed.2d 575 (1988) (earlier conviction in violation of petitioner's rights used as sole evidence to support aggravating circumstance that he previously was convicted of a crime). We believe Barclay and Johnson, in conjunction with Zant, clearly indicate that we should apply harmless-error analysis in the instant case, even though Oklahoma law requires the sentencer to weigh the aggravating and mitigating circumstances. The Supreme Court has said that a death penalty scheme in which the jury balances aggravating and mitigating circumstances is not all that different, in reality, from other schemes, if the jury knows in advance the consequences of its finding of aggravating circumstances. Franklin v. Lynaugh, --- U.S. ----, 108 S.Ct. 2320, 2331 n. 12, 101 L.Ed.2d 155 (1988).
 
 
 45
 Our holding is buttressed by the Supreme Court's repeated admonitions to apply harmless-error analysis to other constitutional errors, even in capital cases. See, e.g., Satterwhite v. Texas, --- U.S. ----, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988) (harmless-error analysis applies to erroneous admission of psychiatric testimony, in violation of Sixth Amendment, at capital sentencing stage); see also Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986) (analysis applies to unconstitutional denial of defendant's right to cross-examine adverse witnesses); Chapman v. California, 386 U.S. 18, 24-25, 87 S.Ct. 824, 828-29, 17 L.Ed.2d 705 (1967) (analysis applies to improper arguments by prosecutor). The Court has held that, although some constitutional errors require automatic reversal, see, e.g., Gray v. Mississippi, 481 U.S. 648, 107 S.Ct. 2045, 2056, 95 L.Ed.2d 622 (1987) (improper exclusion of jurors on basis of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel), these errors "are the exception and not the rule." Rose v. Clark, 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). In Rose, the Court noted that the constitutional errors requiring per se reversal "either aborted the basic trial process ... or denied it altogether." Id. at 578 n. 6, 106 S.Ct. at 3106 n. 6. Thus, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." Id. at 579, 106 S.Ct. at 3107; see also R. Traynor, The Riddle of Harmless Error 50 (1970) ("Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it."). Even in cases in which the Court has held that harmless-error analysis does not apply, it has recognized that the error must go "to the very integrity of the legal system" before such analysis is precluded. Gray, 107 S.Ct. at 2056 (plurality opinion).
 
 
 46
 Coleman asserts that our application of harmless-error analysis to the sentencing determination violates his right to have a jury determine his sentence. The Supreme Court rejected this argument in Rose, a case involving a constitutionally deficient jury instruction:
 
 
 47
 "We agree that the determination of guilt or innocence, according to the standard of proof required by [In re ] Winship [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ] and its progeny, is for the jury rather than the court. Harmless error analysis addresses a different question: what is to be done about a trial error that, in theory, may have altered the basis on which the jury decided the case, but in practice clearly had no effect on the outcome? This question applies not merely to Sandstrom [v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) ] violations, but to other errors that may have affected either the instructions the jury heard or the record it considered.... The dissent's argument--that the Sixth Amendment forbids a reviewing court to decide the impact of a trial error on the outcome--logically implies that all such errors are immune from harmless-error analysis. Yet this Court repeatedly has held to the contrary."
 
 
 48
 478 U.S. at 582 n. 11, 106 S.Ct. at 3108 n. 11 (citations omitted). Cf. Spaziano v. Florida, 468 U.S. 447, 460, 104 S.Ct. 3154, 3162, 82 L.Ed.2d 340 (1984) (Constitution does not require a jury, instead of a court, to make the decision whether a death sentence should be imposed).
 
 
 49
 In applying harmless-error analysis, we must ask ourselves whether we can "declare a belief that [the constitutional error] was harmless beyond a reasonable doubt." Chapman, 386 U.S. at 24, 87 S.Ct. at 828.[11] In doing so, we look at the entire trial record. Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438. We recognize that there is a heightened need for reliability in making the harmless error determination in a capital case, see Johnson, 108 S.Ct. at 1986, 1988-89; Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (plurality opinion), but conclude that in the instant case, the unconstitutional submission to the jury of the "heinous, atrocious, or cruel" aggravating circumstance was harmless beyond a reasonable doubt.
 
 
 50
 At the sentencing stage of Coleman's trial, the jury found five aggravating circumstances, four of which Coleman does not challenge on constitutional or sufficiency of the evidence grounds. See note 1, ante. Coleman does not dispute his conviction, the facts of the murder as proved by the prosecution, or the accuracy of other evidence introduced by the prosecution at the sentencing hearing. At that hearing, the state introduced evidence of Coleman's two prior convictions--one for assault with intent to rob and the other for possession of and assault with a weapon. It showed that, after being arrested following the Sewards' homicides, Coleman escaped from jail. The next day, he cut the throat and hand of Oklahoma police officer Dotson, who had stopped him for speeding. Coleman took Dotson's pistol and shotgun and left him handcuffed in the patrol car. Eli Maghee, who was in jail with Coleman, testified that Coleman told him that he assumed Dotson would die. Coleman told Dotson after their struggle, however, that he was not going to hurt him. Two days later Coleman shot and killed Russell Lewis in Chandler Park in Tulsa and took his pickup truck. Coleman shot Lewis in the head. Coleman then kidnapped Terry Parish, a county detective in Arizona who had stopped him for erratic driving. Coleman took his revolver and left him handcuffed in the back of his patrol car in the desert. Coleman said that if Parish did exactly what he told him to do, he would not kill him. In addition to the shotgun murder of John Seward, for which he was convicted, there was evidence at the guilt stage of his killing of Seward's wife, shooting her in the head and back four times with a shotgun.
 
 
 51
 In affirming the denial of petitioner's first application for habeas relief, we concluded, and the facts recited above reaffirm, that there existed "overwhelming evidence of both guilt and aggravating factors." Coleman I, 802 F.2d at 1236. In addition, no mitigating evidence was introduced at the sentencing hearing, and no evidence from the trial stage reasonably could have been considered by the jury in mitigation. See post Part IV.
 
 
 52
 Finally, in arguing against harmlessness, Coleman points to the evidence the prosecution introduced at the sentencing stage, such as pictures of the victims and of the crime scene, to support the heinous, atrocious, or cruel aggravating circumstance. But the Oklahoma Court of Criminal Appeals repeatedly has held that evidence regarding "the calloused manner in which a crime is committed" may be introduced to support the aggravating circumstance, also charged in the instant case, that the defendant would constitute a continuing threat to society. Fisher v. State, 736 P.2d 1003, 1009 (Okla.Crim.App.1987), on rehearing, 739 P.2d 523, cert. denied, --- U.S. ----, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988); see also Van Woundenberg v. State, 720 P.2d 328, 337 (Okla.Crim.App.), cert. denied, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); Robison v. State, 677 P.2d 1080, 1088 (Okla.Crim.App.), cert. denied, 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984).
 
 
 53
 In both Barclay, 463 U.S. at 956, 103 S.Ct. at 3428, and Zant, 462 U.S. at 886, 103 S.Ct. at 2747, the Supreme Court determined that evidence introduced to support an invalid aggravating circumstance did not require reversal. In both cases that evidence consisted of the defendant's prior record and the Court decided that the evidence was admissible under the Eighth Amendment because it accurately and plausibly described facts about the defendant's record. Barclay, 463 U.S. at 956, 103 S.Ct. at 3428; Zant, 462 U.S. at 887-88, 103 S.Ct. at 2748-49; see also Barclay, 463 U.S. at 967, 103 S.Ct. at 3433 (Stevens, J., concurring in judgment). In the case before us, as in Barclay and Zant, the evidence admitted to support the invalid aggravating circumstance--photographs of the victims and their wounds--though inflammatory, accurately depicted facts of the crime. This case does not involve introduction of misleading or inaccurate information, but rather the "mere invalidation of an aggravating circumstance supported by evidence that was otherwise admissible." See Johnson, 108 S.Ct. at 1988. Introduction of this evidence, then, did not violate Coleman's Eighth Amendment or other constitutional rights. We find nothing in the instant case about the improper consideration of an aggravating circumstance that rendered petitioner's trial fundamentally unfair or aborted the trial's function of reliably determining guilt or innocence and the appropriate sentence.
 
 
 54
 In a state such as Oklahoma, in which the jury makes the death sentencing decision in the first instance by weighing the evidence, see Okla.Stat.Ann. tit. 21, Sec. 701.11, we are very hesitant to find harmless error in the submission to the jury of an unconstitutional aggravating circumstance. At the same time, however, we believe it improper to vacate Coleman's sentence when we are convinced beyond a reasonable doubt that the jury would have imposed the same sentence even if the court had not submitted the invalid circumstance to it. We are convinced in this case because the evidence of guilt is overwhelming, the remaining four aggravating circumstances are strongly supported by the evidence, and there is no mitigating evidence. Thus, we hold that although there was constitutional error at Coleman's trial on this issue, it was harmless.IV
 
 Anti-Sympathy Instruction
 
 55
 Despite the district court's apparent conclusion to the contrary, the state concedes that neither abuse of the writ doctrine nor procedural default bars petitioner from pressing in this court his claim based upon the trial court's allegedly unconstitutional anti-sympathy instruction. See California v. Brown, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987). Therefore, we will reach the merits of this issue without discussing these procedural doctrines.
 
 
 56
 In the instant case, the state trial court instructed the jury as follows: "You should not allow sympathy, sentiment or prejudice to affect you in reaching your decision. You should avoid any influence of passion, prejudice or any other arbitrary factor when imposing sentence."[12] Coleman argues that the inclusion of the word "sympathy" in this instruction violates his Eighth Amendment rights, citing Brown. We have recently treated the issue in Parks v. Brown, 860 F.2d 1545 (10th Cir.1988) (en banc), in which this court held that the following instruction violated the Eighth Amendment: "You must avoid any influence of sympathy, sentiment, passion, prejudice or other arbitrary factor when imposing sentence." Id. at 1552 n. 8. We find that, for purposes of the Eighth Amendment, the two instructions are indistinguishable, as indeed the state concedes. But that does not end our inquiry.
 
 
 57
 The basic problem with Coleman's anti-sympathy instruction argument in the instant case is that he introduced no mitigating evidence at the penalty phase of his trial. Recognizing this void, he asserts that a jury might have based some sympathy on the testimony of two prosecution witnesses--his wife and sister-in-law--during the guilt stage of the trial.[13] In the course of their testimony, each of the witnesses stated that they loved the defendant. Conceding that this is the only evidence that legitimately might have engendered sympathy for him, Coleman asserts that the very meagerness of this evidence compounded the error of the anti-sympathy instruction. In addition, Coleman argues that his counsel's closing argument at the guilt stage basically constituted a plea for mercy and sympathy, and by instructing the jury not to consider sympathy in sentencing him, the court virtually directed a verdict of death.
 
 
 58
 The state, on the other hand, argues that the anti-sympathy instruction merely directed the jury to ignore sympathy not based on mitigating evidence. And, even if the specific anti-sympathy instruction sweeps too broadly, it argues that the trial court's other instructions directing the jury to consider any mitigating factors it might find, see Instruction 9, quoted in note 12, ante, cure the potentially unconstitutional anti-sympathy instruction.
 
 
 59
 Parks specifically rejected the argument that a general instruction to consider all mitigating circumstances cures the error in an anti-sympathy instruction like that here. 860 F.2d at 1556-57. But we do agree with the state that precedents binding upon us define the types of evidence that might properly evoke the sympathy of a jury, and there was no such evidence presented here.
 
 
 60
 During the sentencing phase of a capital case, the defendant has a well-established right to introduce "relevant" mitigating evidence that he proffers as a basis for a sentence less than death. Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (plurality opinion). The Supreme Court has held, however, that a state constitutionally may choose to limit arbitrariness and prohibit reliance on "extraneous emotional factors," by instructing the jury in a capital case to base its sentencing decision on the evidence, and to ignore "factors not presented at trial, and irrelevant to the issues at trial." Brown, 479 U.S. at 543, 107 S.Ct. at 840. That case held that the Eighth Amendment does not prohibit an instruction that the jurors must not "be swayed by 'mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling' " during the penalty phase of a capital murder trial. Id. at 542, 107 S.Ct. at 840. The Court stated that while the Eighth Amendment requires the defendant be given the opportunity to present and have the sentencer consider any relevant mitigating evidence, the instructions must not give "unbridled discretion" to the jury. Id. at 541, 107 S.Ct. at 839. The Brown instruction did not violate these principles because by instructing the jury "to avoid basing its decision on mere sympathy," reasonable jurors would interpret the instruction to mean that they should simply "ignore emotional responses that are not rooted in the aggravating and mitigating evidence introduced during the penalty phase." Id. at 542, 107 S.Ct. at 840 (emphasis in original).
 
 
 61
 Thus, Coleman was not constitutionally entitled to an instruction that permitted the jury to consider sympathy not arising from the evidence, because otherwise sentencing could be based on arbitrary factors and not "on the circumstances of the crime and the character of the individual defendant." Proffitt v. Florida, 428 U.S. 242, 251, 96 S.Ct. 2960, 2966, 49 L.Ed.2d 913 (1976) (opinion of Stewart, Powell, & Stevens, JJ.). Therefore, if there was no mitigating evidence from which a jury might have drawn sympathy for Coleman, or a proffer of such evidence, an instruction which prevented the jury from considering any sympathy in arriving at its sentencing decision would not impair any of Coleman's rights. In the absence of relevant mitigating evidence, any sympathy the jury could draw would be "totally divorced from the evidence adduced," and thus the court properly could instruct the jury not to consider it. Brown, 479 U.S. at 542, 107 S.Ct. at 840.
 
 
 62
 The Supreme Court has defined "relevant mitigating evidence" as "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett, 438 U.S. at 604, 98 S.Ct. at 2964 (plurality opinion) (citation omitted); see also Franklin v. Lynaugh, --- U.S. ----, 108 S.Ct. 2320, 2326, 101 L.Ed.2d 155 (1988) (plurality opinion); Robison v. Maynard, 829 F.2d 1501, 1504-05 (10th Cir.1987).
 
 
 63
 Even though the Court has given a broad interpretation to what qualifies as mitigating evidence, see Skipper v. South Carolina, 76 U.S. 1, 4, 8, 106 S.Ct. 1669, 1670, 1673, 90 L.Ed.2d 1 (1986), we cannot conclude that the statements of Coleman's wife and sister-in-law qualify as "relevant mitigating evidence" on which a jury legitimately might have grounded feelings of sympathy. Even in Skipper, in which the Court arguably gave its broadest reading of what constitutes mitigating evidence, the evidence in question directly concerned the petitioner's own conduct, and thereby his character. Id. at 3, 106 S.Ct. at 1670. In the case before us the only evidence that might be considered as mitigating merely constituted statements that the witnesses loved Coleman; they in no way concerned an aspect of his "character or record and any of the circumstances of the offense." Lockett, 438 U.S. at 604, 98 S.Ct. at 2964.
 
 
 64
 The recently decided Franklin case is analogous to Coleman's. In Franklin, the trial court had refused a jury instruction "that any evidence considered by them to mitigate against the death penalty should be taken into account" in imposing punishment, 108 S.Ct. at 2326, and the petitioner argued that this instruction prevented the jury from considering "residual doubts" about the defendant's guilt when it imposed sentence. The Supreme Court, however, reaffirmed that although "relevant mitigating evidence" includes much, it is limited to evidence concerning the defendant's character, record, or the circumstances of the crime. Thus, it rejected petitioner's argument: "Such lingering doubts are not over any aspect of petitioner's 'character,' 'record,' or a 'circumstance of the offense.' " Id. at 2326. In addition, the Court stated that the defendant's rights were not violated when the jury was allowed to consider the sole mitigating evidence--his good behavior record in prison--only in relation to the future dangerousness aggravating circumstance. Id. at 2328. The Court recognized it had never fully defined exactly what evidence bore on a defendant's character, but said that in limiting the jury's consideration of the behavior evidence to the dangerousness circumstance, the trial court had allowed consideration of the evidence to the extent required by the Constitution. Id. at 2328-29; see also Lockett, 438 U.S. at 604 n. 12, 98 S.Ct. at 2965 n. 12 (trial court may exclude as irrelevant evidence not bearing upon defendant's character, record, or the circumstances of the offense). As Justice O'Connor noted in her concurring opinion in Franklin, "[n]othing in Lockett or Eddings requires that the sentencing authority be permitted to give effect to evidence beyond the extent to which it is relevant to the defendant's character or background or the circumstances of the offense." 108 S.Ct. at 2333 (O'Connor, J., concurring in judgment).
 
 
 65
 The same is true of the statements at issue here. The statements by Coleman's wife and sister-in-law do not in any way bear on Coleman's background or the circumstances of the offense. The only way they could be considered to bear on Coleman's character is to assume that a wife or sister-in-law would not love him unless he had some good character traits. We doubt that a mother's love is given only to those children who deserve it; we doubt that a wife (or even a sister-in-law) expresses love only for a husband who deserves it. And even if the statement of love implies some good character traits it does not identify what they are. Thus, we hold that the statements here do not constitute "relevant mitigating evidence" on which a jury could base sympathy.
 
 
 66
 This situation is analogous to Robison, in which we recently held that testimony of a relative of the victim urging the jury to reject the death penalty was properly denied because it was not relevant mitigating evidence. See 829 F.2d at 1504. Guided by Brown, Franklin, and Robison, we hold that Coleman's constitutional rights were not violated by the trial court's anti-sympathy instruction. The anti-sympathy instruction was erroneous on its face, but did not rise to a violation of the Constitution, as construed in Brown, because there was no relevant mitigating evidence to weigh against the substantial evidence of valid aggravating circumstances. See Parks, 860 F.2d at 1553.
 
 
 67
 Coleman's argument that the trial court's anti-sympathy instruction negated his counsel's plea for mercy or sympathy during his closing argument is troubling. Coleman's counsel did not refer to any evidence produced by either the prosecution or the defense as providing a basis for the jury's sympathy. With respect to weighing the circumstances of the offense in the sentencing decision, the jury was instructed, consistent with Oklahoma law, see Parks v. State, 651 P.2d 686, 694 (Okla.Crim.App.1982), cert. denied, 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983), that if the jury found one or more aggravating circumstances existed beyond a reasonable doubt, it was "authorized to consider imposing a sentence of death."[14] VII R. 991 (emphasis added). Thus, under Oklahoma law, even if the jury finds that the aggravating circumstances outweigh the mitigating circumstances, it is still free to decline to impose the death penalty. See Burrows v. State, 640 P.2d 533, 544 (Okla.Crim.App.1982). We think the instructions sufficiently preserved, under the Constitution, the jury's responsibility and authority to exercise its discretion in the sentencing determination. See Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (Opinion of Justices Stewart, Powell and Stevens); Jurek v. Texas, 428 U.S. 262, 271, 96 S.Ct. 2950, 2956, 49 L.Ed.2d 929 (1976) (Opinion of Justices Stewart, Powell and Stevens).
 
 
 68
 Although we do not approve of the instruction given, we hold that Coleman's constitutional rights were not violated by the anti-sympathy instruction in the particular circumstances of this case.[15]
 
 V
 
 69
 * Improper Prosecution Argument
 
 
 70
 Relying upon Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), Coleman argues that the prosecutor improperly discussed the victim during closing argument at the guilt stage.[16] He asserts that the prosecutor intended to inflame the jury and induce it to base its sentencing decision on the good character of the victim and not on the background, character, and culpability of Coleman.
 
 
 71
 In Booth, the Supreme Court reviewed a procedure whereby the state parole division prepared a presentence report, one part of which included details of the murder's effect on the victim and the victim's family. The report was then admitted into evidence for the sentencer's consideration during the penalty phase of a capital trial. Id. 107 S.Ct. at 2530-31. The Supreme Court held that this "victim impact statement" introduced an arbitrary and impermissible factor into the jury's sentencing decision. The Court stated that for a sentencer permissibly to consider factors other than the defendant's record, character, and the circumstances of the particular crime, the other factors must bear some relationship to the defendant's " 'personal responsibility and moral guilt.' " Id. at 2533 (quoting Enmund v. Florida, 458 U.S. 782, 801, 102 S.Ct. 3368, 3378, 73 L.Ed.2d 1140 (1982)). While noting that some types of information regarding a victim may be relevant because "they relate directly to the circumstances of the crime," Booth, 107 S.Ct. at 2535 n. 10, and recognizing that the trial judge continues to have the responsibility of deciding, under Fed.R.Evid. 403 or an analogous state evidentiary rule, whether prejudice from evidence outweighs its probative value, the Court rejected "the contention that the presence or absence of emotional distress of the victim's family, or the victim's personal characteristics, are proper sentencing considerations in a capital case." Id. at 2535 (footnote omitted).[17]
 
 
 72
 Regarding the prosecutor's arguments at the guilt stage of the present trial, the Oklahoma Court of Criminal Appeals noted that the comments were "unnecessary and not to be condoned." See Coleman v. State, 668 P.2d 1126, 1135 (Okla.Crim.App.1983), cert. denied, 464 U.S. 1073, 104 S.Ct. 986, 79 L.Ed.2d 222 (1984). We agree. Our role in reviewing the comments of a state prosecutor, however, is limited. Because the prosecutor's arguments did not infringe on any specific constitutional right of Coleman, such as his right to introduce mitigating evidence, see Eddings v. Oklahoma, 455 U.S. 104, 113, 102 S.Ct. 869, 876, 71 L.Ed.2d 1 (1982), we only review the prosecutor's comments for fundamental fairness and whether they denied Coleman due process. See Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) ("[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.' ") Id. at 642, 94 S.Ct. at 1871 (quoting Lisenba v. California, 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941)). Booth was an Eighth Amendment case, concerning the introduction of state-sanctioned evidence, and does not alter this rule that we may only review prosecutorial argument for fundamental fairness.
 
 
 73
 We recognize that "[o]ur duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case," Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3121, 97 L.Ed.2d 638 (1987), but we can find no denial of due process in the prosecutor's comments during his closing argument at the guilt stage of this trial. The present case bears a striking similarity to Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), in which the Supreme Court, in finding that a prosecutor's closing argument at the guilt stage of a capital case did not render the trial fundamentally unfair, focused on the fact that "[t]he prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." Id., 477 U.S. at 181-82, 106 S.Ct. at 2472-73. The Court placed special emphasis on the fact that the allegedly improper comments were made at the guilt stage of the trial, "greatly reducing the chance that they had any effect at all on sentencing." Id. at 183 n. 15, 106 S.Ct. at 2473 n. 15. We cannot find that the prosecutor's guilt-stage arguments rendered Coleman's sentencing fundamentally unfair, and we therefore find no constitutional error.[18]
 
 B
 Introduction of Evidence
 
 74
 Also relying on Booth, Coleman argues that at the guilt stage, the trial court improperly allowed into evidence photographs that showed the victim and his family, thereby constituting an impermissible appeal to the jury's emotions.
 
 
 75
 This argument is equally without merit. Even though this issue involves the admission of evidence, Coleman has not succeeded in showing that introduction of the photographs is sufficiently analogous to a victim impact statement to constitute an Eighth Amendment violation. The photos were introduced at the guilt stage, not the sentencing stage, so there is a reduced chance the photos had any effect on sentencing. Darden, 477 U.S. at 183 n. 15, 106 S.Ct. at 2473. In addition, the photos and other contents of the wallet were introduced for the purposes of proving ownership by the victims and their identity. The trial court so instructed the jury. The trial court's decision to admit the photos for this purpose was a matter of state law, insofar as relevancy is concerned, and the court's limiting instruction removed any significant chance that the evidence might violate petitioner's Eighth Amendment rights. Thus, we conclude these photos are not sufficiently analogous to the introduction of the victim impact statement in Booth that their admission was constitutional error.
 
 
 76
 We AFFIRM the district court's denial of the writ of habeas corpus. In light of the fact that this is a capital case, following the consideration of any rehearing petition that may be filed, when the final order of this court is entered, or when the judgment becomes final without further order and issuance of the mandate of this court which would otherwise occur, we will stay our mandate and execution of petitioner's death warrant for thirty days pending the filing of a petition for certiorari in the Supreme Court of the United States; if such a petition for certiorari is filed within such time, then the stay of our mandate and of petitioner's execution will continue until disposition by the Supreme Court of the petition for certiorari.
 
 
 
 [1]
 The other four aggravating circumstances found by the jury were: (1) Coleman was previously convicted of a felony involving the use or threat of violence to the person; (2) Coleman knowingly created a great risk of death to more than one person; (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (4) Coleman probably would continue to commit criminal acts of violence that would constitute a continuing threat to society. Coleman, 802 F.2d at 1235 n. 6; see also Okla.Stat.Ann. tit. 21, Sec. 701.12(1), (2), (5), (7)
 
 
 [2]
 In this court's opinion rejecting the first application for habeas relief, see Coleman v. Brown, 802 F.2d 1227 (10th Cir.1986), cert. denied, 482 U.S. 909, 107 S.Ct. 2491, 96 L.Ed.2d 38 (1987), we rejected the following allegations: (1) that the trial court improperly excluded potential jurors who were opposed to the death penalty, id. at 1231-32; (2) that the exclusion of those jurors denied Coleman his right to a jury composed of a fair cross-section of the community, id. at 1333; (3) that Coleman was denied effective assistance of counsel at both the guilt and sentencing stages of his trial, id. at 1233-36; (4) that Coleman suffered prejudice from the trial court's failure to appoint an investigator to aid him in the preparation of his defense, id. at 1236-37; (5) that the prosecutor's improper statements during closing arguments at both the guilt and the sentencing stages denied Coleman a fair trial, id. at 1237-42; and (6) that the trial court erred in not giving Coleman an evidentiary hearing on his habeas petition, id. at 1242
 
 
 [3]
 Because Coleman was represented by counsel on his first petition, he is charged with the knowledge of reasonably competent counsel. See Jones, 722 F.2d at 167; Daniels v. Blackburn, 763 F.2d 705, 707 (5th Cir.1985). We do not decide whether, if Coleman had represented himself on the prior petition, he might be chargeable with a different level of knowledge. Cf. Jones, 722 F.2d at 167
 
 
 [4]
 This circuit has not decided previously the standard of review to apply to a district court's dismissal of a petition on abuse of the writ grounds. At least one other circuit has determined that abuse of discretion is the standard. See Jones, 722 F.2d at 169. We do not decide the question today, because we find the district court should have addressed the merits of Coleman's claim under any standard that might be applied
 
 
 [5]
 The Sykes opinion did state, however, that the cause and prejudice analysis of Francis v. Henderson, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), might excuse a state procedural default. Sykes, 433 U.S. at 84-85, 97 S.Ct. at 2505. In addition, a federal court is free to exercise its independent judgment in disposing of the federal claim if it finds that the state courts have in fact considered it on the merits. Id. at 87, 97 S.Ct. at 2506. Because we find no consistent application of a procedural default rule by the Oklahoma courts when considering a change in the law after an earlier appeal, we need not reach Coleman's argument that he met the cause and prejudice requirements necessary to overcome a procedural default. See Dutton v. Brown, 812 F.2d 593, 596 (10th Cir.) (en banc), cert. denied, --- U.S. ----, 108 S.Ct. 116, 98 L.Ed.2d 74 (1987)
 
 
 [6]
 In Castleberry v. State, 590 P.2d 697, 701 (Okla.Crim.App.1979), the court held that even though the petitioner's Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), argument had been considered on direct appeal, an intervening decision of the U.S. Supreme Court, clarifying Brady, rendered the issue "inadequately raised" on direct appeal. See Okla.Stat.Ann. tit. 22, Sec. 1086 (court may not reach merits of allegations in second petition "unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the prior application") (emphasis added). Inasmuch as Castleberry concerns the "inadequately raised" prong of the statute, it is not directly on point with the instant case. It is, however, persuasive in showing that an intervening change or clarification in the law entitles a petitioner to consideration of his claim at the post-conviction stage
 
 
 [7]
 The court in this case instructed the jury as follows:
 "You are further instructed that the term 'heinous,' as that term is used in these instructions means extremely wicked or shockingly evil, and that 'atrocious' means outrageously wicked and vile; and 'cruel' means designed to inflict a high degree of pain, utter indifference to or enjoyment of, the suffering of others; pitiless."
 Jury Instruction 8, Brief of Petitioner/Appellant, App. E; cf. Cartwright, 822 F.2d at 1488 & n. 6.
 
 
 [8]
 In Marks, the Supreme Court held that overruling its own precedent was unforeseeable for due process purposes. 430 U.S. at 194-95 & n. 10, 97 S.Ct. at 994 & n. 10. See also Devine, 866 F.2d at 345. We do not doubt that Stouffer 's overruling of prior Oklahoma precedent was unforeseeable for purposes of ex post facto analysis
 
 
 [9]
 The statute was rendered unconstitutional by the Supreme Court's decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). See Donaldson v. Sack, 265 So.2d 499 (Fla.1972)
 
 
 [10]
 The state also urges us to review the evidence to determine whether, under the narrowing construction of Stouffer now applied by the Oklahoma courts, the murder in this case still qualifies as heinous, atrocious, or cruel. As we construe the request, it goes beyond harmless-error review, in which we ask whether beyond a reasonable doubt the mistake did not affect the jury's decision, and requires our independent evaluation, under some lesser standard, of the appropriateness of the death penalty in the circumstances of the case. In light of our disposition of the case, we find it unnecessary to determine whether we may engage in such a determination. We note, however, that the United States Supreme Court declined to engage in such analysis when the State of Oklahoma there made what appears to be a similar argument. Cartwright, 108 S.Ct. at 1859
 
 
 [11]
 In some contexts, the Supreme Court has reversed death sentences because it could not conclude that the constitutional error had "no effect" on the jury's deliberations or sentencing decision. See Skipper v. South Carolina, 476 U.S. 1, 8, 106 S.Ct. 1669, 1673, 90 L.Ed.2d 1 (1986) ("Nor can we confidently conclude that credible evidence [offered by petitioner in mitigation] would have had no effect upon the jury's deliberations."); Caldwell v. Mississippi, 472 U.S. 320, 341, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) ("Because we cannot say that this effort [to minimize the jury's sense of responsibility] had no effect on the sentencing decision, that decision does not meet the standard of reliability that the Eighth Amendment requires."). In cases in which the Court has ruled on a jury's consideration of an invalid aggravating circumstance, however, the Court has mandated no such standard. See Barclay, 463 U.S. at 958, 103 S.Ct. at 3429; Zant, 462 U.S. at 888-90, 103 S.Ct. at 2748-50
 In Skipper, the jury was denied evidence it properly might consider in sentencing and in Caldwell the jury was misled as to its role in sentencing. This seems logically different from the aggravating circumstance cases in which the jury had adequate and independent grounds for imposing the death sentence--the other aggravating circumstances.
 
 
 [12]
 Only Instructions 9 and 10 given by the trial court are relevant to our determination of whether that court improperly foreclosed the jury's consideration of mitigating evidence. Instructions 9 and 10, in relevant part, are as follows:
 Instruction 9:
 "You are instructed that mitigating circumstances are not specifically enumerated in the statutes of this State but the law of this State sets up certain minimum mitigating circumstances you shall follow as guidelines in determining which sentence you impose in this case. You shall consider any or all of these minimum mitigating circumstances which you find apply to the facts and circumstances of this case. You are not limited in your consideration to these minimum mitigating circumstances. You may consider any additional mitigating circumstance, if any, you find from the evidence in this case. What are and what are not additional mitigating circumstances is for you the jury to determine.
 The following are the minimum mitigating circumstances as provided by law...."
 Instruction 10:
 "In arriving at your determination as to what sentence is appropriate under the law, you are authorized to consider all the evidence received here in open Court presented by the state and the defendant throughout the trial of Stage One or this Stage Two of the case before you.
 ....
 You are the judges of the facts. The importance and worth of the evidence is for you to decide. You should not allow sympathy, sentiment or prejudice to affect you in reaching your decision. You should avoid any influence of passion, prejudice or any other arbitrary factor when imposing sentence. You should do your duties as jurors faithfully, as you swore you would do.
 The Court has made rulings during the second part of this trial. In ruling, the Court has not in any way suggested to you, nor intimated in any way, what you should decide. The Court does not express any opinion whether or not statutory aggravating circumstances or mitigating circumstances did or did not exist nor does the Court suggest to you in any way the punishment to be imposed by you."
 Brief of Petitioner/Appellant, App. E.
 
 
 [13]
 The trial court instructed the jury that in imposing sentence it could consider "all the evidence received here in open Court presented by the state and the defendant throughout the trial of Stage One or this Stage Two of the case before you." See note 11, ante. This instruction was permissible under Oklahoma law. See Brogie v. State, 695 P.2d 538, 542 (Okla.Crim.App.1985); see also Gregg v. Georgia, 428 U.S. 153, 164, 96 S.Ct. 2909, 2921, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, & Stevens, JJ.)
 
 
 [14]
 Instruction 1 in the sentencing stage stated in pertinent part that "[i]t is now your duty to determine the penalty which shall be imposed for this offense...." Instruction 7 stated:
 "You are instructed that in the event you unanimously find that one or more of these aggravating circumstances existed beyond a reasonable doubt, then you would be authorized to consider imposing a sentence of death.
 If you do not unanimously find beyond a reasonable doubt one or more of the statutory aggravating circumstances existed, then you would not be authorized to consider the penalty of death. In that event the sentence would be imprisonment for life.
 If you do unanimously find one or more of these aggravating circumstances existed beyond a reasonable doubt and you further find that such aggravating circumstance or circumstances is outweighed by the finding of one or more mitigating circumstances, the death penalty shall not be imposed. In that event the sentence would be imprisonment for life."
 VII R. 991 (emphasis added).
 
 
 [15]
 We are not directly asked here to reconsider our holding in Coleman I that defense counsel acted competently even though he introduced no mitigating evidence at the penalty phase of the trial. 802 F.2d at 1235. We do review, sua sponte, that issue in the context of the anti-sympathy instruction of which Coleman now complains. Using hindsight, had counsel anticipated that the trial court's instruction would violate the rule set out in our Parks decision, no doubt he would have tried to introduce some mitigating evidence. That proves too much, however, because, had either Parks or Brown been decided at the time of this trial, no doubt the court would have given a different sympathy instruction. Competency of counsel must be judged by what he reasonably should have known at the time of the trial in 1979. The same reasoning that has led the state not to oppose consideration of this issue in this habeas petition as an abuse of the writ, and that has compelled us to entertain the issue on its merits, dictates that counsel was not incompetent for failing to anticipate the issue at the 1979 trial. Additionally, we note, as we did in Coleman I, counsel's response in state post-conviction hearings on whether mitigating evidence existed, that he could not even put members of Coleman's family on the stand. See Coleman I, 802 F.2d at 1235
 
 
 [16]
 During his closing argument at the guilt stage, the prosecutor referred to the victim's personal traits, his possible thoughts at the time of his murder, and the fact that the victim's relatives also suffered as a result of the defendant's crime
 
 
 [17]
 The state argues that Coleman's contention regarding the prosecutor's argument is foreclosed by the abuse of the writ doctrine, see ante, pp. 1379-1382, because on his first habeas application, Coleman argued that the prosecutor's closing argument at the guilt stage "attempted to inflame the jury and evoke sympathy for the victim." Coleman I, 802 F.2d at 1237. We rejected that argument in Coleman I, finding that although the arguments were improper, they did not rise to the level of constitutional error. Id. at 1238. We have serious doubts whether the argument based on Booth represents a sufficiently new legal theory to avoid treatment as a successive petition. Booth concerned the introduction of state-sanctioned evidence, not prosecutorial arguments. Nevertheless, we choose to discuss briefly the merits of Coleman's argument
 The state also argues that procedural default bars Coleman from raising any claim regarding the prosecutor's argument or the introduction of evidence argument next considered, because counsel made no contemporaneous objection to the prosecutor's argument. See Parks v. State, 651 P.2d 686, 693 (Okla.Crim.App.1982), cert. denied, 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983). Because of our disposition on other grounds, we will not discuss the state's procedural default argument. See Moore v. Kemp, 824 F.2d 847, 851 n. 5 (11th Cir.1987), cert. granted sub nom. Zant v. Moore, --- U.S. ----, 108 S.Ct. 1467, 99 L.Ed.2d 697 (1988); Pierre v. Shulsen, 802 F.2d 1282, 1283 n. 3 (10th Cir.1986) (unnecessary to decide whether petitioner adequately preserved all issues in state courts if petitioner's "argument lacks all merit"), cert. denied, 481 U.S. 1033, 107 S.Ct. 1964, 95 L.Ed.2d 536 (1987).
 
 
 [18]
 See also Kirkpatrick v. Blackburn, 777 F.2d 272, 284-85 (5th Cir.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986); Brooks v. Kemp, 762 F.2d 1383, 1409 (11th Cir.1985) ("The fact that there is a victim, and facts about the victim properly developed during the course of the trial, are not so far outside the realm of 'circumstances of the crime' that mere mention will always be problematic. It is not necessary that the sentencing decision be made in a context in which the victim is a mere abstraction."), cert. denied, 478 U.S. 1022, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986)